COLORADO COURT OF APPEALS        **2017COA88**

Court of Appeals No. 14CA1393
Douglas County District Court No. 13CR145
Honorable Paul A. King, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Shawna Lee Hoggard,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE WELLING
Furman and Terry, JJ., concur

Announced June 29, 2017

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Meghan M. Morris, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    During the course of a heated child-custody dispute, defendant Shawna Lee Hoggard forwarded to the court-appointed child and family investigator (CFI) a chain of e-mails between her and her ex-husband.  Hoggard allegedly falsified that e-mail chain by adding five sentences that made it appear that her ex-husband had threatened her.  As a result of that alleged falsification, Hoggard was charged with (and ultimately convicted of) second degree forgery and attempt to influence a public servant.  Hoggard appeals those convictions.

¶ 2    On appeal, Hoggard contends that the jury was erroneously instructed on both charges.  First, she contends that the trial court constructively amended the second degree forgery charge by instructing the jury on the uncharged and more serious offense of felony forgery.  Second, she contends that the trial court erred in its instruction on attempt to influence a public servant by instructing the jury that the "intent" element applied only to one element of the offense, when, in fact, the intent element applies to two additional elements of the offense as well.

¶ 3    Hoggard acknowledges that she did not raise either of the alleged errors that she identifies on appeal during trial, but

1

contends that those instructional errors require reversal of her convictions as plain error. The People contend that appellate review is entirely barred because Hoggard either invited the error or waived her right to review by not objecting at trial when given the opportunity to do so. The People further argue that even if we conclude that appellate review is appropriate, the instructions do not merit reversal under the plain error standard.

¶ 4     We reject the People's argument that the invited error or waiver doctrines bar appellate review under the circumstances of this case and, instead, conclude that the instructional errors are subject to plain error review. We further conclude that the trial court committed obvious instructional error in both instances. But we disagree that the trial court's error as to the second degree forgery charge effected a constructive amendment of that charge or constituted plain error. We finally conclude that there is no reasonable probability that the trial court's failure to instruct the jury on the required mental state for each element of the attempt to influence a public servant charge contributed to Hoggard's conviction of that offense and, therefore, was not plain error. We affirm.

## I.    Background

¶ 5    In the course of her investigation, the CFI received an e-mail from Hoggard forwarding a chain of what purported to be prior correspondence between her and her ex-husband.  The forwarded e-mail chain included a threat ostensibly made by Hoggard's ex-husband.  The CFI forwarded the e-mail chain to Hoggard's ex-husband with the threatening language highlighted and asked what his intent was in writing the e-mail.  He responded that he did not write the threatening portion of the e-mail.  He sent the CFI a copy of what he said was the original e-mail, which did not contain the threatening language.  Hoggard's ex-husband then contacted the police to report that an e-mail in his name had been falsified.

¶ 6    Hoggard provided the investigating police officer with access to her e-mail account, including a folder of correspondence with her ex-husband.  The officer found a version of the e-mail identical to that which had been forwarded to the CFI, except that it did not include the threatening language.  But when the officer accessed Hoggard's sent folder, he found the version of the e-mail containing the threatening language.

¶ 7    Hoggard was charged with attempt to influence a public servant, a class 4 felony, and second degree forgery, a class 1 misdemeanor.

¶ 8    As discussed at greater length below, the prosecutor tendered to the court an instruction for second degree forgery that tracked the elements of felony forgery and an instruction for attempt to influence a public servant that did not set the mens rea element of intent out as a separate element.  At the jury instruction conference, neither side requested any changes to the instructions tendered by the prosecution.

¶ 9    Hoggard appeals both convictions based on independent contentions of unpreserved instructional error.

## II.    Reviewability of Instructional Error

¶ 10    The People argue that, as a threshold matter, the doctrines of invited error and waiver preclude appellate review of Hoggard's instructional error claims.  The People contend that defense counsel approved the disputed jury instructions, thereby either inviting the errors of which Hoggard now complains or waiving any right to appellate review of the asserted instructional errors.  We disagree.

## A.    Invited Error

¶ 11    The invited error doctrine is premised on "the rule that a party may not complain on appeal of an error that [s]he has invited or injected into the case." *People v. Zapata*, 779 P.2d 1307, 1309 (Colo. 1989).  The doctrine applies "where [a] party expressly acquiesces to conduct by the court or the opposing party," *Horton v. Suthers*, 43 P.3d 611, 619 (Colo. 2002), and precludes appellate review of instructional error if that error was "injected by the defendant as a matter of trial strategy," *Zapata*, 779 P.2d at 1309.  Invited error may also be found where an "omission [by counsel] is strategic." *People v. Stewart*, 55 P.3d 107, 119 (Colo. 2002).  The invited error doctrine, however, "does not preclude appellate review of errors resulting from attorney incompetence" or from inadvertence.  *People v. Gross*, 2012 CO 60M, ¶ 9 (citing *Stewart*, 55 P.3d at 119).

¶ 12    We conclude that defense counsel's failure to object to the instructional errors does not amount to invited error.

¶ 13    With respect to the jury instruction on the charge of attempt to influence a public servant, the crux of Hoggard's defense to that charge was that she did not act with the intent necessary to satisfy

the "attempt[] to influence a public servant" and "by means of deceit" elements. She asserts that the instruction is erroneous because it did not specify the culpable mental state required for those very elements. Given the juxtaposition between trial strategy and the asserted error in the instruction, we discern no plausible strategic motive for defense counsel's failure to object, and, therefore, conclude that counsel's failure was an oversight, not a strategy. *See Stewart*, 55 P.3d at 119 (finding no invited error based on, inter alia, "the heavy reliance [defendant] placed on [a] theory during trial"). Thus, invited error does not apply here.

¶ 14    As to the jury instruction on second degree forgery, we note that the only distinction between the two offenses is that felony forgery requires additional proof that the falsified document was of a particular type. Because the type of document at issue (an e-mail) was never contested at trial, we are persuaded that defense counsel's failure to object was, likewise, the result of inadvertence, and that any error was not invited.

## B.    Waiver

¶ 15    The lines distinguishing the doctrine of invited error from that of waiver are not precisely drawn. *See People v. Rediger*, 2015 COA

6

26, ¶ 56 (*cert. granted* Feb. 16, 2016) (citing decisions treating "implied waiver" as synonymous with "invited error"); *People v. Greer*, 262 P.3d 920, 937 n.7 (Colo. App. 2011) ("Invited error is akin to waived error."). Although divisions of this court have recently clarified the parameters of waiver, *see People v. Rail*, 2016 COA 24, ¶¶ 27-41; *Rediger*, ¶¶ 51-60, the precise contours of the waiver doctrine in Colorado are not yet clearly settled.[1] Each division of this court that has analyzed the waiver issue, however, has held that waiver requires some "affirmative conduct," albeit to varying degrees. *See, e.g., People v. Yoder*, 2016 COA 50, ¶ 10 (finding waiver where counsel objected to certain protective order provisions, but stated that he had no objection to others); *Rail*, ¶¶ 36-37 (finding instructional error claim waived by "affirmative conduct"); *Rediger*, ¶¶ 59-61. Although *Rediger* provides the closest analogy to the circumstances of this case, we conclude that the

---

[1] The Colorado Supreme Court has granted certiorari to review whether the division in *Rediger* "erred in applying the waiver doctrine as a complete bar to appellate review" on the basis of defense counsel's statement that counsel was "satisfied" with the tendered jury instruction, but where defense counsel was unaware that the tendered instruction erroneously included an uncharged offense. *See People v. Rediger*, No. 15SC326, 2016 WL 1746021 (Colo. Feb. 16, 2016) (unpublished order).

facts before us are distinguishable, though not markedly, from those presented in *Rediger*.

¶ 16    In *Rediger*, the court ordered the prosecutor to prepare proposed jury instructions before trial, and ordered defense counsel to file any objections within two days following the submission of the prosecutor's proposed instructions. *Rediger*, ¶ 45. The proposed instructions included elemental instructions under a different subsection of the statute than was charged in the information. *Id.* Defense counsel did not object. *Id.* During jury selection, the court described the charges against the defendant using the erroneous instruction, and defense counsel did not object. *Id.* at ¶ 46. After the close of evidence and following a jury instruction conference, the court asked if defense counsel was "satisfied with the instructions"; defense counsel responded, "Yes. Defense is satisfied." *Id.* at ¶ 47. The court then instructed the jury using the erroneous instruction; again, defense counsel did not object. *Id.* at ¶ 48. Based on these circumstances, the *Rediger* division concluded that, through counsel's "affirmative conduct," the defendant had waived any claim of instructional error or relief based on any alleged constructive amendment. *Id.* at ¶ 64.

8

¶ 17    Here, the prosecution's proposed jury instructions were provided on the morning of the first day of trial, without the opportunity to deliberate and object that had been present in *Rediger*. Further, the errors in the instructions alleged by Hoggard were not evident during the court's initial reading of the charges to the jury, again in contrast to *Rediger*. Finally, at the close of the jury instruction conference, defense counsel merely said that there was no objection from the defense, and did not affirmatively state that the defense was "satisfied" with the instructions, as was relied on in *Rediger*. Thus, *Rediger* is factually distinguishable, albeit thinly.

¶ 18    To the extent, however, that a fair reading of *Rediger*'s waiver analysis reaches the facts presented here — and there is a sound argument that it does, *see Rediger*, ¶ 57 (noting that "[n]o Colorado case has tempered waiver by distinguishing mere general acquiescence from other forms of affirmative conduct") — we respectfully decline to follow it. This is a run-of-the-mill example of an unpreserved jury instruction appeal: the prosecution tendered instructions; the court asked if there were any objections; both sides simply said, "no"; and the court gave the instructions as

tendered. This is the heartland of plain error instructional review. Indeed, if failing to object to an instruction is waiver and objecting is preservation, the space remaining for plain error review in the instructional error context diminishes nearly to the point of vanishing.

¶ 19    Refusing to find waiver here does not give the defendant a free pass for failing to timely object; she must still run the daunting gauntlet of plain error review to obtain any relief. Moreover, finding waiver here would have perverse consequences. If simply stating "no objection" constitutes waiver barring even plain error review, then counsel's only readily apparent option to avoid waiver is to take no position at all (or refuse to answer) when asked by the trial court if there is any objection. The practical effect of not objecting when invited to do so and taking no position is the same: conveying to the court that no particularized objection comes to defense counsel's mind. But the latter creates an unnecessarily antagonistic trial environment by obligating prudent defense counsel to "take no position" each time the trial court invites input but no specific objection comes to mind.

¶ 20    Thus, we hold that waiver does not bar appellate review under the circumstances presented here.  *See People v. Perez-Rodriguez*, 2017 COA 77, ¶ 28 (holding that counsel's statement of "no objection" in response to "the court's inquiry [that] grouped all twenty-four instructions" together "does not establish deliberate conduct sufficient to support invited error or waiver"); *see also United States v. Harris*, 695 F.3d 1125, 1130 n.4 (10th Cir. 2012) (holding that defense counsel had not waived right to appeal by replying, "No, Your Honor" when trial court asked whether there were objections to jury instructions); *United States v. Zubia-Torres*, 550 F.3d 1202, 1207 (10th Cir. 2008) ("[T]here must be some evidence that the waiver is knowing and voluntary, beyond counsel's rote statement that she is not objecting . . . .").  We next turn to the merits of Hoggard's appeal.

### III.    Second Degree Forgery Instructional Error

¶ 21    The trial court gave the jury the following elemental instruction for second degree forgery:

> The elements of the crime of Second Degree Forgery are:
>
> 1.  That the defendant,

11

2.  in the State of Colorado, at or about the date and place charged,

3.  with intent to defraud,

4.  falsely made, completed, or uttered a written instrument,

5.  *which was or purported to be, or which was calculated to become or represent if completed an instrument which does or may evidence, create, or otherwise affect a legal right, interest, obligation, or status; namely, an email.*

(Emphasis added.)

¶ 22    While paragraphs one through four correctly describe the elements of second degree forgery, paragraph five is an element of felony forgery,[2] not second degree forgery.

¶ 23    As relevant here, felony forgery is described as follows:

(1) A person commits forgery, if, *with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument* which is or purports to be, or which is calculated to become or to represent if completed:

. . .

---

[2] The two offenses are "forgery," which is a class 5 felony, and "second degree forgery," which is class 1 misdemeanor.  For the sake of clarity, we refer to the former as "felony forgery" in this opinion.

12

(c) A deed, will, codicil, contract, assignment, commercial instrument, promissory note, check, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status . . . .

§ 18-5-102(1)(c), C.R.S. 2016 (emphasis added).

¶ 24    Second degree forgery covers all other written instruments:

A person commits second degree forgery if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument of a kind *not* described in section 18-5-102 . . . .

§ 18-5-104(1), C.R.S. 2016 (emphasis added).

¶ 25    Under this comprehensive statutory scheme, it is *always* a crime when a person "with intent to defraud, . . . falsely makes, completes, alters, or utters a written instrument," but it is only a *felony* when the written instrument is of a type specified in section 18-5-102(1).

¶ 26    Hoggard argues that her conviction for second degree forgery must be reversed because the trial court constructively amended the second degree forgery charge when it gave an instruction that tracked the elements of felony forgery.  Although the trial court's forgery instruction was erroneous, we conclude that the erroneous

instruction neither effected a constructive amendment nor constituted plain error. We, therefore, affirm the conviction.

### A. There Was No Constructive Amendment

¶ 27 A constructive amendment occurs when a court "changes an essential element of the charged offense and thereby alters the substance of the charging instrument." *People v. Rodriguez*, 914 P.2d 230, 257 (Colo. 1996). Constructively amending a charge violates a defendant's constitutional due process rights because it subjects the defendant to the risk of conviction for an offense that was not originally charged. *Id.* In other words, a constructive amendment presents a risk that a defendant's conviction is based on conduct different than what was charged in the information. *See People v. Madden*, 111 P.3d 452, 461 (Colo. 2005) ("To prevail on a constructive amendment claim, a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." (quoting *United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005))). Here, the erroneous jury instruction did not result in the government proving conduct

14

*different* than what was charged; instead, the government unnecessarily assumed the burden of proving everything that was charged *and more.*

¶ 28    In *People v. Riley*, 2015 COA 152, a division of this court considered an instructional error identical to the one presented here and concluded that the trial court's error constructively amended the charge against the defendant. *Id.* at ¶ 15. In reaching its conclusion, however, the *Riley* division specifically rejected the People's argument that the erroneous instruction did not effect a constructive amendment and reversal was not warranted because second degree forgery is a lesser included offense of felony forgery. *Id.* at ¶¶ 15-16. That is where we part ways with the division in *Riley*. *See People v. Isom*, 2015 COA 89, ¶ 17 (*cert. granted on other grounds* Nov. 23, 2015) (A division of the court of appeals is not bound to follow the precedent established by another division "if our analysis leads us to a different result.").

¶ 29    The *Riley* division relied exclusively on the "statutory elements" test to conclude that second degree forgery is not a lesser included offense of felony forgery. *Riley*, ¶ 16 (citing *People in Interest of H.W., III*, 226 P.3d 1134, 1138 (Colo. App. 2009)); *see*

*also* § 18-1-408(5)(a), C.R.S. 2016. We agree with the *Riley* division that second degree forgery is not a lesser included offense of felony forgery under the "statutory elements" test. But the statutory elements test is not the exclusive test for determining whether an offense is a lesser included offense of another. *See Reyna-Abarca v. People*, 2017 CO 15, ¶ 51 n.3 (recognizing that section 18-1-408(5)(c) provides a distinct basis from the "strict elements" test for determining whether an offense is a lesser included offense); *People v. Raymer*, 662 P.2d 1066, 1069 (Colo. 1983) ("We neither held nor implied . . . that subsection (5)(a) of section 18-1-408 constituted the only test of a lesser included offense.").

¶ 30    We decline to follow *Riley* because we conclude that second degree forgery is a lesser included offense of felony forgery under the test set forth in section 18-1-408(5)(c) — a test which the *Riley* division was never asked to consider and did not address.

¶ 31    Section 18-1-408(5)(c) provides:

> (5) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:
>
> . . .

16

(c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.

¶ 32    After considering the "single-distinction" test set forth in section 18-1-408(5)(c), we conclude that second degree forgery is a lesser included offense of felony forgery.  The mens rea and actus reus elements for both forgery offenses are identical; to commit either offense, a person must, "with intent to defraud, . . . falsely make[], complete[], alter[], or utter[] a written instrument."  The offenses differ only with respect to the type of document involved in the crime.  *See* § 18-5-102(a)-(h), C.R.S. 2016.  The second degree forgery offense does not enumerate types of documents that give rise to a misdemeanor charge.  Instead, the statute states that "[a] person commits second degree forgery if" that person falsifies "a written instrument *of a kind not described in section 18-5-102 or 18-5-104.5*."  § 18-5-104 (emphasis added).

¶ 33    The catch-all structure of the second degree forgery statute allows a defendant to be fairly convicted of the misdemeanor offense without a particularized finding as to the type of document that was falsified.  The distinction between the offenses, therefore, boils down

to felony forgery's requirement that the falsified document be of a particular type. Second degree forgery does not require proof of that element. Because this is the only distinction between the two offenses, we hold that second degree forgery is, indeed, a lesser included offense of felony forgery under the test set forth in section 18-1-408(5)(c). And, therefore, instructing the jury on felony forgery was not a constructive amendment because Hoggard was both charged with and convicted of second degree forgery, a lesser included offense of felony forgery.

## B. The Trial Court Did Not Commit Plain Error

¶ 34    Having concluded that there was no constructive amendment, we turn to whether Hoggard has shown plain instructional error. *See Liggett v. People*, 135 P.3d 725, 733 (Colo. 2006) (unpreserved claims of instructional error are reviewed for plain error). To reverse a conviction for plain error, we must find that (1) an error occurred; (2) the error was obvious; and (3) the error so undermined the fundamental fairness of the trial as to cast doubt on the judgment's reliability. *People v. Helms*, 2016 COA 90, ¶ 14. "As applied to jury instructions, the defendant must 'demonstrate not only that the instruction affected a substantial right, but also that

18

the record reveals a reasonable possibility that the error contributed to [her] conviction.'" *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) (quoting *People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001)).

¶ 35　　We cannot find plain error here. While the trial court made an instructional error and that error was obvious, Hoggard was not prejudiced by the error. As noted above, the only distinction between the offenses is that felony forgery specifies certain types of documents that give rise to a felony charge. But the type of falsified document (an e-mail) was never disputed at trial. Therefore, there is no reasonable likelihood that the instructional error affected the outcome of the trial. Hoggard was charged with and convicted of second degree forgery. While the jury was erroneously instructed on felony forgery, Hoggard's defense to that uncharged offense is necessarily the same as the defense she put on at trial. Thus, we cannot identify any plausible way in which the trial court's error affected the outcome of the trial.

¶ 36　　We, therefore, conclude that Hoggard's conviction for second degree forgery, a lesser included offense of the instructed offense, must be affirmed, notwithstanding the instructional error. *Cf. People v. Shields*, 822 P.2d 15, 22 (Colo. 1991) (finding no plain

error where "[n]ot only did the instructional error committed . . . not prejudice the defendant, it inured to his benefit"); *cf. People v. Sepulveda*, 65 P.3d 1002, 1006-07 (Colo. 2003) (sustaining conviction for lesser included offense where jury was erroneously instructed on greater offense and convicted); *see also id.* at 1006 (citing *Rutledge v. United States*, 517 U.S. 292, 305-06 & n.15 (1996), to note that the United States Supreme Court has "approv[ed] the practice of substituting conviction for a lesser included offense when a conviction for a greater offense is reversed on grounds exclusively related to the greater offense").

### IV. Attempt to Influence a Public Servant

¶ 37 Hoggard next argues that her conviction for attempt to influence a public servant must be reversed because the trial court did not instruct the jury on the required mens rea for each element of the offense, thereby violating her constitutional due process rights. She contends that, by including the intent requirement in only one element, the instruction contravened the statutory presumption that a mental state specified for an offense applies to all elements of that offense. Hoggard argues that the trial court's erroneous jury instruction is plain error. We disagree.

20

¶ 38    We review this issue of unpreserved instructional error challenge for plain error.

### A.    The Instruction Was Erroneous

¶ 39    The attempt to influence a public servant statute reads as follows:

> Any person who attempts to influence any public servant by means of deceit or by threat of violence or economic reprisal against any person or property, with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member, commits a class 4 felony.

§ 18-8-306, C.R.S. 2016.

¶ 40    Because the statute prescribes the culpable mental state of "intent" for one element, the same mens rea must be proved for each element of the offense, unless an intent to limit its application "clearly appears." § 18-1-503(4), C.R.S. 2016; *accord People v. Coleby*, 34 P.3d 422, 424 (Colo. 2001); *People v. Perez*, 2016 CO 12, ¶ 11. No such intent clearly appears in the attempt to influence a public servant statute — and neither party contends otherwise. Therefore, the mens rea requirement of "intent" applies to each element of the offense.

21

¶ 41    The trial court gave the following instruction on the charge of attempt to influence a public servant:

> The elements of the crime of Attempt to Influence a Public Servant are:
>
> 1.    That the defendant,
>
> 2.    in the State of Colorado, at or about the date and place charged,
>
> 3.    attempted to influence a public servant,
>
> 4.    by means of deceit,
>
> 5.    *with the intent* to alter or affect the public servant's decision, vote, opinion, or action concerning any matter,
>
> 6.    which was considered or performed by the public servant or the agency or body of which the public servant was a member.

(Emphasis added.)

¶ 42    Although the trial court's instruction on the charge tracked the text of the statute, it did not expressly require the jury to find that Hoggard acted *with intent* as to the third and fourth elements of the crime — namely, that she *intended* to attempt to influence a public servant, and that she *intended* to do so by means of deceit. *See Auman v. People*, 109 P.3d 647, 663-64 (Colo. 2005); *People v. Suazo*, 87 P.3d 124, 128 (Colo. App. 2003) (finding an instruction

22

erroneous when the mens rea element of "knowingly" was included in only one of the two conduct elements). Nor did the instruction set off the mens rea requirement as a separate element. *See People v. Bornman,* 953 P.2d 952, 954 (Colo. App. 1997) (collecting cases in which the court found no reversible instructional error because the trial court had offset the mens rea requirement as a stand-alone element of jury instructions); *see also* COLJI-Crim. 8-3:09 (2016) (setting off the intent requirement as a separate element for the offense of attempt to influence a public servant).

¶ 43 The People contend that setting off the mens rea element separately is not necessary here because "attempt[ing] to influence" someone or acting "by means of deceit" are inherently intentional acts, even without explicitly attaching any mens rea element. This argument would have some purchase if this were a general intent offense requiring only knowing conduct. But because this is a specific intent offense requiring intentional conduct, we are not persuaded.

¶ 44 Attempt is not inherently intentional; instead, attempt usually shares the same mental state required for the predicate offense. *Cf.* § 18-2-101(1), C.R.S. 2016 (defining criminal attempt to include

23

"acting with the kind of culpability otherwise required for commission of an offense").  This is even true for an offense where an attempt alone is sufficient to complete the crime.  For example, merely a "knowing" mens rea is required to convict a person of menacing, which includes the element of "attempt[ing] to place another person in fear of imminent serious bodily injury." § 18-3-206(1), C.R.S. 2016; *see also People v. Lopez*, 2015 COA 45, ¶¶ 50-54 (discussing jury instruction defining "attempt" in the menacing context).  The absence of any mens rea requirement for the "attempt[] to influence" element is slightly more problematic where, as here, the jury was not provided with any definition of "attempt."  In short, "attempt[] to influence" is not inherently intentional when disconnected from a mens rea element, making the lack of a mens rea requirement attached to the element erroneous.

¶ 45     The same holds true for "by means of deceit."  In *Auman*, the supreme court determined that failure to attach the "knowingly" mens rea to the "without authorization *or by deception*" element of theft was plain error.  109 P.3d at 665-72 (emphasis added).  In so holding, the majority was unpersuaded by the partial dissent's

contention that "the concept of acting 'by deception' carries with it an inherent requirement of knowledge." *Id.* at 673 (Mullarkey, C.J., concurring in part and dissenting in part). Here, the culpable mental state is "with intent," not merely knowingly. *Cf. Brown v. People*, 239 P.3d 764, 767 (Colo. 2010) ("Under Colorado law, the requirement that a defendant act knowingly is also satisfied where a defendant satisfies the *more-exacting* 'intentional' standard.") (emphasis added) (citation omitted); *see also* § 18-1-503(3) (setting forth the hierarchy of culpable mental states). Thus, we are not persuaded that acting "by means of deceit" is inherently intentional conduct, particularly when untethered to a mens rea element.

¶ 46 Accordingly, we conclude that the trial court's instruction on attempt to influence a public servant was erroneous.

## B. The Error Was Obvious

¶ 47 "Generally, an error is obvious when the action challenged on appeal contravenes (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law." *People v. Dinapoli*, 2015 COA 9, ¶ 30. We conclude that the instruction was contrary to legal principles that were settled at the time of trial.

¶ 48    Various cases have held that the mens rea element applied to all substantive elements of the offense and that the presumptive way in which that is conveyed in a jury instruction is to set out the mens rea as a separate element. *See, e.g., Auman*, 109 P.3d at 663-66; *People v. Bossert*, 722 P.2d 998, 1011 (Colo. 1986) ("[T]he mens rea term 'knowingly,' offset as it is from the conduct element, modifies all conduct described in [the conduct element]."); *People v. Stephens*, 837 P.2d 231, 234 (Colo. App. 1992) (finding no instructional error "because 'knowingly' precedes and is offset from the other elements and is followed by a comma"). In 2005, our supreme court in *Auman* held that the trial court committed plain error when it gave the jury a theft instruction that "failed to expressly modify the 'without authorization' element of the crime of theft with the culpable mental state of 'knowingly.'" 109 P.3d at 663-64.

¶ 49    In *People v. Garcia*, 2017 COA 1, a division of this court ruled that a failure to set off the "knowingly" element of a sexual assault offense did not satisfy the obviousness prong of plain error. *Id.* at ¶¶ 10-12. In that case, however, the instruction given by the trial court tracked the Colorado Model Jury Instruction available *at the*

26

*time of trial* for that offense. *Id.* at ¶ 10. The division in *Garcia* concluded that, because the instruction given at trial tracked the then-available model jury instruction, the error was not obvious. *Id.* at ¶ 11.

¶ 50    In contrast, there was no model jury instruction for this offense at the time of Hoggard's trial. Thus, the trial court had neither the guidance nor the safe harbor available to the trial court in *Garcia.* But at the time of trial there was a well-established practice of formulating jury instructions so that the mens rea requirement was offset from the other elements of the crime. *See, e.g., Auman,* 109 P.3d at 663-64; *Bornman,* 953 P.2d at 954 (collecting cases where appellate courts found no reversible instructional error because the trial court had offset the mens rea requirement as a stand-alone element of jury instructions). Doing so adequately informs the jury that the mens rea requirement applies to all elements of the offense. *See Bornman,* 953 P.2d at 954. That practice was not followed here. Further, absent contrary guidance for this offense, the supreme court's decision in *Auman* provides sufficient notice to render the error obvious. Accordingly, the trial court's error was obvious at the time of trial.

### C. There is No Reasonable Possibility the Error Contributed to Hoggard's Conviction

¶ 51      In her opening brief, Hoggard argued that because the evidence was circumstantial, the investigation was cursory, and in a statement to law enforcement she denied knowing that the e-mail at issue was altered, there is a reasonable probability that relieving the People of the burden of proving that she acted *intentionally* with respect to acting by deceit and attempting to influence a public servant contributed to her conviction. The People did not respond to this argument in their answer brief; instead they relied exclusively on their invited error and waiver arguments and their contention that the instruction was not erroneous (or at least not obviously erroneous) to urge affirmance of the conviction. As discussed above, we are not persuaded by those arguments. But to reverse we must be convinced "not only that the instructions affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to the conviction." *People v. Chase*, 2013 COA 27, ¶ 59 (citing *Miller*, 113 P.3d at 750); *cf. People v. Casias*, 2012 COA 117, ¶ 55 ("[A]n appellate court is authorized to disregard a harmless error even when a harmless

error argument has not been made in the briefs." (citing *United States v. Giovannetti*, 928 F.2d 225, 226 (7th Cir. 1991))).

¶ 52 We assess prejudice by looking at the record as a whole, including all of the instructions and the jury's other verdicts. *See Chambers v. People*, 682 P.2d 1173, 1178 (Colo. 1984). As discussed below, other portions of the jury's verdicts that were untainted by the identified error make us certain that the instructional error did not contribute to the conviction. *See People v. Linares-Guzman*, 195 P.3d 1130, 1134-35 (Colo. App. 2008) (looking to jury's verdict on a separate charge to conclude that any instructional error was not plain error because there was no reasonable possibility that such error contributed to defendant's conviction).

¶ 53 First, the jury's verdict on the second degree forgery charge fatally undermines Hoggard's prejudice argument with respect to the lack of a mens rea requirement being attached to the "by means of deceit" element. In rendering its verdict on that charge, the jury explicitly found that Hoggard, "*with intent to defraud,* falsely made, completed, or uttered a written instrument," that instrument being the same e-mail at issue in the attempt to influence a public

servant charge.  (Emphasis added.)  This verdict cures any prejudice from the instruction's failure to attach "with intent" to "by means of deceit" in the attempt to influence a public servant instruction.  *Cf. People v. Freda*, 817 P.2d 588, 591 (Colo. App. 1991) (holding that "with intent to defraud" is "identical" to "by deception," making it inconsistent for a jury to find the former but not the latter) (citation omitted).

¶ 54     Second, while "with intent" was not attached to the third element — "attempted to influence a public servant" — the jury, in rendering its verdict on attempt to influence a public servant, explicitly found that Hoggard acted "*with intent* to alter or affect the public servant's decision, vote, opinion, or action concerning any matter," in the fifth element of that charge.[3]  (Emphasis added.)  It simply cannot be cogently argued that Hoggard *intended* to "alter or affect the public servant's decision, vote, opinion, or action" but

---

[3] Although the issue was raised in the trial court, we express no opinion as to whether a CFI qualifies as a "public servant" under the statute, as this issue was not raised by either party on appeal. *See People in Interest of N.G.*, 2012 COA 131, ¶ 70 n.14; *Amos v. Aspen Alps 123, LLC*, 298 P.3d 940, 959 n.16 (Colo. App. 2010), *as modified on denial of reh'g* (Feb. 18, 2010), *aff'd in part, rev'd in part*, 2012 CO 46.

that, in doing so, she did not also intend to attempt to influence that same public servant. Thus, we conclude that the inclusion of "with intent" in the fifth element cured any error in omitting that requirement in the third element.

¶ 55    We conclude that there is no reasonable probability that the trial court's instructional error contributed to Hoggard's conviction, and, therefore, it was not plain error. Accordingly, we affirm the conviction.

V.    Conclusion

¶ 56    We affirm the convictions for second degree forgery and attempt to influence a public servant.

JUDGE FURMAN and JUDGE TERRY concur.

31