The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 8, 2018

**2018COA28**

**No. 15CA0683, People v. Robles-Sierra — Constitutional Law — Sixth Amendment — Speedy and Public Trial; Crimes — Sexual Exploitation of a Child — Sexually Exploitative Material — Publication — Distribution**

The division considers two issues of first impression in this criminal case. First, the division considers whether the trial court closed the courtroom in violation of defendant's right to a public trial when it allowed the prosecutor to show the jury portions of exhibits containing video recordings and still images on a screen that could not be seen by people in the courtroom gallery. The division holds that this was not a closure of the courtroom.

Second, the division considers the meanings of "publishes" and "distributes" in the child exploitation statute, section 18-6-403(3)(b), C.R.S. 2017. The division holds that defendant's downloading of sexually exploitative material to his computer using

peer-to-peer file sharing software, and his saving of that material in sharable files or folders accessible by others using the same software, constituted both publishing and distributing the material within the meaning of the statute.

COLORADO COURT OF APPEALS                   **2018COA28**

Court of Appeals No. 15CA0683
Boulder County District Court No. 13CR1277
Honorable Andrew R. Macdonald, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Fernando Robles-Sierra,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE J. JONES
Hawthorne and Richman, JJ., concur

Announced March 8, 2018

Cynthia H. Coffman, Attorney General, Erin K. Grundy, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Chelsea E. Mowrer, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Fernando Robles-Sierra challenges his four convictions for sexual exploitation of a child on several grounds.  One is that the district court "closed" the courtroom, in violation of his Sixth Amendment right to a public trial, by allowing the prosecutor to show portions of exhibits containing video recordings and still images of children to the jurors on a screen that couldn't be seen by people in the courtroom gallery.  This is the first time this issue has been presented to a Colorado appellate court.  We hold that no closure occurred.

¶ 2     Also as a matter of first impression, we consider the meanings of "publishes" and "distributes" in the child sexual exploitation statute, section 18-6-403(3)(b), C.R.S. 2017, and conclude that when defendant downloaded sexually exploitative material to his computer using peer-to-peer file sharing software, and saved the material in sharable files or folders accessible by others also using such software, he both published and distributed the material.

¶ 3     Because we reject defendant's other contentions as well, we affirm.

## I. Background

¶ 4 Sheriff's department detectives found over 600 files of child pornography — in both video recording and still image form — on various electronic devices defendant owned.[1] In each instance, defendant had downloaded someone else's file to his computer using ARES peer-to-peer file sharing software. *See People v. Phipps*, 2016 COA 190M, ¶¶ 22-23 (describing how a similar software program — LimeWare — works); *Stickle v. Commonwealth*, 808 S.E.2d 530, 532-34 (Va. Ct. App. 2017) (explaining how ARES works). He had done so in a way that made the new file on his computer downloadable by others using the same software; he hadn't chosen the option of preventing downloads from automatically being saved in the sharable folder. As it turns out, other users had downloaded hundreds of defendant's files.

¶ 5 The People charged defendant with four counts of sexual exploitation of a child, two each under subsections (3)(b) and (3)(b.5) of section 18-6-403. The first two alleged that on or between certain dates defendant knowingly prepared, arranged for,

---

[1] These included a desktop computer, a laptop computer, an external (or portable) hard drive, and a flash (or thumb) drive.

published, produced, promoted, made, sold, financed, offered, exhibited, advertised, dealt in, or distributed sexually exploitative material. *See* § 18-6-403(3)(b). The last two alleged that between certain dates defendant knowingly possessed or controlled sexually exploitative material. *See* § 18-6-403(3)(b.5).

¶ 6    At trial, the prosecution's theory on the charges under subsection (3)(b) was that defendant had published, offered, and distributed the sexually exploitative material by downloading it in a way that others, using the file sharing software, could download it from his computer files. The prosecution's theory for the charges under subsection (3)(b.5) was more straightforward: defendant possessed the material by downloading it to his computers and by transferring files containing the material to a thumb drive.

¶ 7    Defendant admitted that he'd downloaded and looked at the sexually exploitative material. But he said he didn't know that by downloading the files he was distributing or possessing them. Put simply, his defense was that he hadn't "knowingly" violated the law, based largely on his claimed ignorance of how ARES software works.

¶ 8    A jury found defendant guilty of all four charges.

## II. Discussion

¶ 9 Defendant challenges all the convictions for two reasons: (1) the district court violated his constitutional right to a public trial by closing the courtroom during the presentation of parts of certain exhibits and (2) the district court erred by allowing the prosecution's experts to testify to ultimate legal conclusions that were the jury's sole prerogative to decide. He challenges his two convictions for publishing, offering, or distributing sexually exploitative material for two additional reasons: (3) the prosecution's theories of publishing and distributing were "legally insufficient" and (4) the jury instruction defining "offer" had the effect of directing a verdict against him on these charges. We take up, and reject, these four challenges in turn.

### A. The Court Didn't Close the Courtroom

¶ 10 Two of the prosecution's witnesses testified about videos and still images taken from defendant's devices. The discs and thumb drive containing the videos and still images were introduced as exhibits. Over defense counsel's objection, the prosecutor displayed the videos and still images using a screen that could be seen by the witnesses and the jurors, but not by anyone in the courtroom

4

gallery. Each witness described in open court the videos and still images, in quite graphic terms.

¶ 11    Defendant argues that the court violated his constitutional right to a public trial because denying members of the gallery the ability to see the videos and still images was a closing of the courtroom, and the court failed to determine whether closing the courtroom was proper under the factors articulated in *Waller v. Georgia*, 467 U.S. 39 (1984).

### 1.    Preservation and Standard of Review

¶ 12    The People concede, and we agree, that defendant preserved this issue for appellate review.

¶ 13    Defendant's argument presents issues of law — namely, whether the court closed the courtroom and, if so, whether the court considered and articulated appropriate factors in doing so. We review such issues de novo. *See People v. Hassen*, 2015 CO 49, ¶ 5 (an appellate court reviews legal issues relating to courtroom closure de novo).[2]

---

[2] The facts relating to this issue are undisputed.

5

## 2. Analysis

¶ 14     The underlying premise of defendant's argument is that the court's refusal to allow the members of the gallery to see the showing of the videos and still images from the exhibits was a closure of the courtroom.  But that premise doesn't hold up, and so his entire argument collapses.

¶ 15     Of course, every defendant has a constitutional right to a public trial.  U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16.  Excluding members of the public from the courtroom for all or a part of a trial — commonly referred to in this context as closing the courtroom — may infringe on that right.  We say "may" because the public trial right isn't absolute; it may yield to competing interests.  *Waller*, 467 U.S. at 45; *Hassen*, ¶ 8.  In determining whether the right must yield in a particular circumstance, the court must consider several factors.  *Waller*, 467 U.S. at 48; *Hassen*, ¶ 9.

¶ 16     But for those factors to come into play — indeed, for the right to a public trial to be implicated at all — there must be some closure of the courtroom.  And so we ask, "Does preventing members of the gallery from seeing something shown to witnesses and jurors constitute a closure?"

6

¶ 17    Defendant argues that it does because the public trial right extends to the presentation of evidence.  That argument proves too much.  To be sure, that portion of a trial when evidence is presented should be open to the public.  But it doesn't follow that the right extends to the viewing of all exhibits by the public as those exhibits are introduced or discussed.  *Cf. State v. Russell*, 357 P.3d 38, 42-43 (Wash. 2015) (though jury selection, particularly voir dire, implicates the right to a public trial, the mere label of "jury selection" doesn't mean the public trial right automatically is implicated; public trial right was not implicated by work sessions in which judge, the defendant, and counsel dealt with preliminary hardship issues raised by responses to juror questionnaires).  After all, "spectators often are disadvantaged in viewing trial exhibits as they are offered and introduced."  *State v. Schiefelbein*, 230 S.W.3d 88, 116 (Tenn. Crim. App. 2007) (rejecting argument that the defendant's right to a public trial was violated when the court screened the media and the public from seeing videotapes of a child victim; no closure occurred).[3]

---

[3] To accept defendant's position would, in effect, require counsel or

¶ 18    The public trial right is concerned with the public's *presence* during (or access to) the trial.  So where no one is excluded from the courtroom, it simply isn't implicated.  *See United States v. Toschiaddi*, No. NMCCA 200800044, 2009 WL 2151149, at *8-9 (N-M. Ct. Crim. App. July 16, 2009) (court didn't close the courtroom by restricting visual access to screen showing images of child pornography taken from an exhibit; spectator access to the courtroom wasn't limited); *Schiefelbein*, 230 S.W.3d at 114-16; *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564-74 (1980) (plurality opinion) (discussing the common law history and evolution of the public trial right in terms of public attendance); *People v. Knapp*, 495 N.Y.S.2d 985, 989 (N.Y. App. Div. 1985) (public trial right wasn't implicated by holding trial at a church because public access wasn't restricted); *State v. Russell*, 172 P.3d 361, 362-64 (Wash. Ct. App. 2007) (prohibiting the press from photographing juvenile witnesses without their consent wasn't a closure of the courtroom because no one was prevented from

_____

the court to distribute copies of documentary exhibits to members of the gallery.  And it would require the bailiff to pass around other physical exhibits to members of the gallery.  Historically speaking, however, neither happens.

entering or leaving the courtroom). *See generally* 6 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure* § 24.1(a), at 351 (4th ed. 2015) ("The defendant's right to a public trial is adequately protected so long as there is free public access to the trial.").

¶ 19 The district court didn't exclude any member of the public during the presentation of the evidence. Anyone who cared to could come into the courtroom, see the presentation of evidence, hear the testimony of witnesses, and otherwise observe the goings on. In this way, the public could see that defendant was dealt with fairly and not unjustly condemned, the judge and attorneys were kept keenly aware of their sense of responsibility and the importance of their roles, and witnesses were encouraged to come forward and testify truthfully. *See Waller*, 467 U.S. at 46 (identifying these "aims and interests" as animating the public trial right).

¶ 20 In sum, because the court didn't close the courtroom, there wasn't any violation of defendant's right to a public trial.

## B. The Experts' Testimony Wasn't Plain Error

¶ 21    Defendant next contends that the following testimony by the prosecution's experts usurped the jury's role to decide ultimate issues:

- Detective Shavin, a forensic computer expert, in answering the question whether he felt there was any need to look further after examining a computer and thumb drive, said, "I didn't, no. After we looked at this, I felt like we had more than enough evidence that met the elements of the crime."

- Detective Shavin also said, "If [ARES] is up and running on your computer and you have sharing enabled and you have files in any of your shared folders, you are now distributing those files. Those files are now available to others to download from your computer."

- Detective Cronce, an expert in internet crimes against children, testified how an ARES user goes about downloading a file kept in another ARES user's sharable files, showing the jury how he had downloaded files at issue in this case. At one point, Detective Cronce said

the software found a file of interest that "was being distributed" and "so it started the download." He also said that ARES locates a file containing an image that likely "is being distributed somewhere else in the world." And he answered "yes" to the prosecutor's question whether once an ARES user has downloaded another user's file (or a part of that file) "the other computer[] provide[s] you or distribute[s] to you that portion of the child porn?"

- Detective Cronce, in explaining his investigative process, said, "And once I determine that it's a violation of 18-6-403, which is Sexual Exploitation of a Child by Distribution and Possession, I would go out and write service on this IP address, I would check with the American Registry for Internet Numbers, ARIN, and find out who the internet service provider is by putting that IP in." He later testified that he contacted the internet service provider to determine, from the Internet Protocol (or IP) address associated with a file or files that he had

11

downloaded, the location of that IP address (which turned out to be defendant's street address).

### 1. Preservation and Standard of Review

¶ 22 Defense counsel didn't object to any of the testimony defendant now challenges on appeal.

¶ 23 We review a district court's decision allowing testimony for an abuse of discretion. *See Nicholls v. People*, 2017 CO 71, ¶¶ 14-17; *People v. Jimenez*, 217 P.3d 841, 866 (Colo. App. 2008) (expert testimony).[4] Because defense counsel didn't timely object, if we determine that the district court erred, we must then decide whether the error rises to the level of plain error. *Hagos v. People*, 2012 CO 63, ¶ 14; *People v. Rector*, 248 P.3d 1196, 1202-03 (Colo. 2011) (unpreserved claim that expert's testimony usurped the jury's role is reviewable only for plain error). An error is plain only if it was obvious and so undermined the fundamental fairness of the

---

[4] When, as in this case, no one objected to the testimony, and therefore the district court didn't actually rule on its admissibility, it's more accurate to frame the inquiry as whether the court would've abused its discretion in allowing the testimony if defense counsel had timely objected. *See People v. Davis*, 2017 COA 40, ¶ 12.

trial as to cast serious doubt on the reliability of the conviction. *Hagos*, ¶ 14.[5]

### 2.    Analysis

¶ 24    "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  CRE 704.  But a witness may not usurp the jury's factfinding role.  *See Rector*, 248 P.3d at 1203; *People v. Weeks*, 2015 COA 77, ¶ 88.

¶ 25    There's obvious tension between these principles.  This tension often makes separating the admissible from the inadmissible difficult.  Nonetheless, a line must be drawn.  But where?  To answer that question we ask (and answer) four more.  First, was the testimony clarified on cross-examination?  Second, did the testimony express an opinion of the applicable law or legal

---

[5] Defendant urges us to review the question whether the court erred (as distinguished from the question whether any error requires reversal) de novo because he challenges the testimony on constitutional grounds.  "Only those errors 'that specifically and directly offend a defendant's constitutional rights are "constitutional" in nature.'"  *People v. Flockhart*, 2013 CO 42, ¶ 20 (quoting *Wend v. People*, 235 P.3d 1089, 1097 (Colo. 2010)).  It's unclear whether the asserted error falls within that category.  But even if we assume that it does, we reach the same conclusions.

standards, thereby usurping the court's role?  Third, did the court properly instruct the jury on the law and that the jury was free to accept or reject the testimony?  And fourth, did the witness opine that the defendant committed the crime or that it was likely the defendant committed the crime?  *Rector*, 248 P.3d at 1203; *Weeks*, ¶ 89.

¶ 26     Applying those factors to the challenged testimony, we conclude as follows:

- Detective Shavin's testimony that he felt he had "more than enough evidence that met the elements of the crime," and Detective Cronce's testimony about what he would do if he determined that there was "a violation" of the child exploitation statute, and that he followed that process to locate the source of the IP address, were part of the detectives' explanations of their respective investigations.  So that testimony was likely permissible.  *Cf. People v. Robinson*, 226 P.3d 1145, 1150-52 (Colo. App. 2009) (informant's statements to police officers were admissible for nonhearsay purpose

of showing why they investigated the matter as they did).

- The rest of the testimony comprised references to "distribution," but it's not entirely clear that the witnesses were using the term in the legal sense contemplated by section 18-6-403. And some of that testimony was in the context of explaining the way ARES works and the course of the investigation. In other words, considering the testimony in context, the witnesses weren't opining directly that defendant distributed the files.[6] And the court properly instructed the jury on the elements of the offenses and that the jurors could reject the experts' testimony. For these reasons, we think that whether this testimony usurped the jury's role is debatable.

¶ 27 But even if we assume all of the challenged testimony was improper, we conclude that any error fails the plain error test.

---

[6] One of the statements was to the effect that a file is distributed when one user downloads it from another user's file. As discussed below, that's not the extent of the meaning of "distributes" contemplated by the statute.

15

¶ 28    That the testimony about "distribution" may have been improper certainly wasn't obvious.  *See People v. Dinapoli*, 2015 COA 9, ¶ 30 ("Generally, an error is obvious when the action challenged on appeal contravenes (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law.").

¶ 29    And none of the testimony undermines our confidence in the verdicts.  This is so for two reasons.  First, recall that defendant's primary (and it appears only) defense was that he hadn't *knowingly* distributed or possessed the files because he didn't know how the ARES program worked.  The experts didn't testify at all about defendant's state of mind.  Second, the evidence that defendant distributed and possessed the files was overwhelming.  *See Martinez v. People*, 2015 CO 16, ¶ 16 (an erroneous instruction on an element of an offense wasn't plain error because the evidence proving that element was overwhelming).

¶ 30    In sum, we see no plain error relating to the experts' testimony.

## C.   The Prosecution's Theories of "Publishes" and "Distributes" Were Legally Sufficient

¶ 31    Under section 18-6-403(3)(b), a person commits sexual exploitation of a child if he "knowingly . . . [p]repares, arranges for, publishes, including but not limited to publishing through digital or electronic means, produces, promotes, makes, sells, finances, offers, exhibits, advertises, deals in, or distributes, including but not limited to distributing through digital or electronic means, any sexually exploitative material."  The court instructed the jury on the elements of the offense, tracking the statutory language.  The element describing the prohibited acts (preparing, arranging for, publishing, etc.) included all of the acts prohibited by the statute.  As now relevant, the court didn't instruct the jury on the meanings of "publishes" and "distributes."

¶ 32    The prosecutor argued to the jury that defendant had published, offered, and distributed the videos and still images by using ARES to download them to a share-capable file.  The jury returned general verdicts that didn't indicate which of these theories it had agreed with (or whether it agreed with all of them).

¶ 33    Defendant argues that the prosecution's theories of publication and distribution were "legally insufficient" because the mere downloading of sexually exploitative material to a share-capable file isn't publication or distribution, and because we don't know if the jury convicted on either basis or some proper basis, the verdicts on the two subsection (3)(b) counts can't stand. *See Griffin v. United States*, 502 U.S. 46, 59 (1991); *People v. Dunaway*, 88 P.3d 619, 629 (Colo. 2004).

### 1.    Preservation and Standard of Review

¶ 34    Defendant concedes, and we agree, that he didn't preserve this issue for appellate review.

¶ 35    Defendant couches his argument in terms of whether the court properly instructed the jury: he says that given how the prosecutor argued publication and distribution, the court shouldn't have included those theories in the elemental instruction. We see this as more of a challenge to the prosecutor's statements in closing argument. (After all, the elemental instruction didn't adopt the prosecutor's statements.) But be that as it may, the questions central to resolving defendant's contention are whether the prosecution's theories of publication and distribution were legally

18

correct.  Those are questions of law.  It's well established that we review questions of law, including those of statutory interpretation, de novo.  *Doubleday v. People*, 2016 CO 3, ¶ 19.

¶ 36    Because defendant didn't preserve this issue, we reverse only if any error is plain error.  *Hagos*, ¶ 14.

### 2.    Analysis

#### a.    Meaning of "Publishes"

¶ 37    The statute doesn't define "publishes."  So we look to that term's plain meaning, considering, of course, the context in which the statute uses it.  *See Marshall v. People*, 2013 CO 51, ¶ 21; *Bostelman v. People*, 162 P.3d 686, 690 (Colo. 2007).

¶ 38    The term "publish" has a variety of meanings.  One dictionary includes the following:

- "to declare publicly: make generally known: DISCLOSE, CIRCULATE";

- "to place before the public (as through a mass medium): DISSEMINATE";

- "to produce for publication or allow to be issued for distribution or sale"; and

- "to reproduce for public consumption."

19

Webster's Third New International Dictionary 1837 (2002). Another

defines it as "[t]o distribute copies (of a work) to the public." Black's

Law Dictionary 1428 (10th ed. 2014). And yet another defines it as

"[t]o prepare and issue (printed material) for public distribution or

sale." American Heritage Dictionary 1417 (4th ed. 2000).

¶ 39      We conclude that the term "publishes" as used in section 18-

6-403(3)(b) includes within its ambit all these meanings, and

perhaps more. Such a broad reading of the term is dictated by its

context. In enacting the statute, the General Assembly declared

that "to protect children from sexual exploitation it is necessary

to . . . exclude all [sexually exploitative material depicting children]

from the channels of trade and commerce," and that even "the mere

possession or control of any sexually exploitative material results in

continuing victimization of our children." § 18-6-403(1), (1.5). It

therefore created three categories of prohibited acts involving those

persons not dealing directly with children used to make sexually

exploitative material — subsections (3)(b), (3)(b.5), and (3)(c).[7]

---

[7] Subsections (3)(a) and (3)(d) proscribe causing, inducing, enticing, or permitting a child to engage in, or be used for, any explicit sexual

20

Subsections (3)(b.5) and (3)(c) prohibit possessing or controlling, or possessing or controlling with the intent to deal in, sell, or distribute, sexually explicit material, respectively. But, consistent with the General Assembly's goals, subsection (3)(b) goes much further. It proscribes no fewer than thirteen different acts. Perusing that list leaves one with the unmistakable impression that the General Assembly sought to cut a wide swath: by using so many different (and sometimes overlapping) terms, the General Assembly plainly intended the statute to reach any use of sexually explicit material beyond mere possession or control that impacts or involves "the channels of trade and commerce."

¶ 40    Reading "publishes" in this light, we conclude that defendant's use of ARES peer-to-peer file sharing software to download sexually exploitative material onto share-capable files accessible to anyone in the ARES network constituted publishing that material. Defendant placed that material before the public, he allowed it to be issued for distribution, he reproduced it for public consumption, he

---

conduct for the purposes of making sexually exploitative material or producing a performance.

distributed copies to the public,[8] and he prepared and issued it for public consumption.  And so the prosecution's theory of "publishes" wasn't legally insufficient.

### b.    Meaning of "Distributes"

¶ 41    Again we're confronted with determining the meaning of a term that the General Assembly hasn't defined.  So we return to the same principles set forth above: we consider the term's plain meaning in context, and we construe it broadly to effectuate the General Assembly's manifest intent.

¶ 42    Looking once more to various dictionaries, we see that "distribute" can mean

- "to divide among several or many: deal out: apportion esp. to members of a group or over a period of time," Webster's Third New International Dictionary 660;

- "DISPENSE," *id.*;

- "to give out or deliver esp. to the members of a group," *id.*;

---

[8] As discussed below, defendant's conduct also constituted distribution of sexually exploitative material.

- "[t]o apportion; to divide among several[;] . . . [t]o deliver," Black's Law Dictionary 576; and

- "[t]o divide and dispense in portions," American Heritage Dictionary 525.

¶ 43    These definitions are useful, but fortunately they're not our only navigational tools.  Other courts construing provisions similar to ours have held that downloading child pornography onto a share-capable file constitutes distributing that material.  *E.g.*, *United States v. Carani*, 492 F.3d 867, 875-76 (7th Cir. 2007) (construing U.S. Sentencing Guidelines Manual § 2G2.2(b)(3)(F) (U.S. Sentencing Comm'n 2006)); *United States v. Griffin*, 482 F.3d 1008, 1011-12 (8th Cir. 2007) (construing U.S. Sentencing Guidelines Manual § 2G2.2(b)(2)(B) (U.S. Sentencing Comm'n 2003)); *United States v. Shaffer*, 472 F.3d 1219, 1223-24 (10th Cir. 2007) (construing 18 U.S.C. § 2252A(a)(2)) (2006); *State v. Lyons*, 9 A.3d 596, 604-06 (N.J. Super. Ct. App. Div. 2010); *cf. Wenger v. State*, 292 S.W.3d 191, 198-99 (Tex. App. 2009) (such conduct constituted "disseminating" child pornography).

¶ 44    Several of these cases expressly reject the same argument defendant makes in our case — that one can't distribute sexually

23

exploitative material (a/k/a child pornography) without "actively transfer[ring] possession to another."  In *Shaffer*, for example, Judge (now Justice) Gorsuch used the following analogy to make the point:

> It is something akin to the owner of a self-serve gas station.  The owner may not be present at the station, and there may be no attendant present at all.  And neither the owner nor his or her agents may ever pump gas.  But the owner has a roadside sign letting all passersby know that, if they choose, they can stop and fill their cars for themselves, paying at the pump by credit card.  Just because the operation is self-serve, or in Mr. Shaffer's parlance, passive, we do not doubt for a moment that the gas station owner is in the business of "distributing," "delivering," "transferring" or "dispersing" gasoline; the *raison d'etre* of owning a gas station is to do just that.  So, too, a reasonable jury could find that Mr. Shaffer welcomed people to his computer and was quite happy to let them take child pornography from it.

*Shaffer*, 472 F.3d at 1223-24.

¶ 45    Enough said.  The prosecution's theory of "distributes" passes muster.

## 3. Synthesis

¶ 46 Because all three of the prosecution's legal theories of liability under subsection (3)(b) were viable,[9] we aren't faced with a situation like that in *People v. Mantos*, 250 P.3d 586 (Colo. App. 2009), where the prosecution relied on legally incorrect theories of "prepares" and "arranges for" under the same provision. It necessarily follows that there wasn't any error.

### D. The Instruction on "Offers" Doesn't Require Reversal

¶ 47 The district court didn't provide the jury with a definition of the meaning of "offers" in subsection (3)(b). But the court did give the jury an instruction that addressed the scope of the term as applied to the alleged facts of this case. That instruction said,

> The term "offers" in the context of sexually exploitative materials includes making sexually exploitative materials available or accessible to others. In the context of a peer-to-peer file sharing network, a defendant offers sexually exploitative material by knowingly leaving it in the share folder for other users to download.

This language was taken from *People v. Rowe*, 2012 COA 90, ¶ 13.

---

[9] Defendant doesn't challenge the prosecution's legal theory of "offers."

¶ 48    Defendant argues that the instruction was improper because it goes beyond the plain and ordinary meaning of "offers" and because it had the effect of directing a verdict against him.

### 1.    Preservation and Standard of Review

¶ 49    These arguments aren't preserved.  At the instruction conference, defense counsel objected that the draft instruction tendered by the prosecution didn't include the word "knowingly" and objected to including the second sentence.  But counsel didn't say why the second sentence was problematic.  Nor did counsel object that the instruction was unnecessary, that it was broader than the plain and ordinary meaning of "offers," or that it directed a verdict.

¶ 50    We review the district court's decision to give a particular jury instruction for an abuse of discretion.  *People v. Gonzales*, 2017 COA 62, ¶ 4; *People v. Nerud*, 2015 COA 27, ¶ 43.  But we determine de novo whether an instruction accurately states the law, *People v. McClelland*, 2015 COA 1, ¶ 14, as we do whether an instruction directs a verdict, *see State v. Green*, 896 N.W.2d 770, 775 (Iowa 2017) ("[W]hen a jury instruction implicates a constitutional right, our review is de novo.").

26

¶ 51     Because defense counsel didn't preserve the argument that the instruction improperly expanded the meaning of offer beyond its plain meaning, if we agree with the argument we will reverse only if the error was plain. *Hagos*, ¶ 14. This means not only that the error must have been obvious, but also that the record must reveal a reasonable possibility that it contributed to the convictions. *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005); *People v. Hoggard*, 2017 COA 88, ¶ 34.

¶ 52     Defendant's argument that the instruction directed a verdict, however, is a different kettle of fish. Though defendant didn't preserve this argument, he argues that an error of this nature is structural — that is, the error requires reversal in all circumstances. The People counter that plain error review applies. We needn't resolve this dispute because we conclude that the instruction didn't direct a verdict.[10]

---

[10] Though the federal courts review even unpreserved structural errors for plain error, Colorado hasn't adopted that approach. *See People v. Kadell*, 2017 COA 124, ¶ 56 n.10 (J. Jones, J., concurring in part and dissenting in part).

## 2. Analysis

### a. Beyond Plain Meaning

¶ 53   Defendant seems to argue that the court shouldn't have "defined" "offers" in this way because the term has a plain and ordinary meaning — "'to make available or accessible' and 'to present for acceptance or rejection.'" *Rowe*, ¶ 12 (quoting Webster's Third New International Dictionary 1566).  But we see no error.

¶ 54   Though it's true that "offers" has a commonly understood meaning, and that the instruction the court gave wasn't required, that doesn't mean the court abused its discretion by giving it.  Likewise, though the *better* practice may have been not to give the instruction (because using excerpts from opinions in instructions "is generally an unwise practice," *Evans v. People*, 706 P.2d 795, 800 (Colo. 1985)), it doesn't follow that the court necessarily erred by giving it.

¶ 55   To the extent defendant argues that the instruction somehow broadened the commonly understood meaning of "offers," we disagree.  The instruction was an accurate statement of the law, taken from *Rowe*, ¶ 13, a case remarkably similar to this one.  The instruction didn't so much "define" "offers" as set forth a factual

circumstance that would fit within the plain and ordinary meaning of "offers."

¶ 56     In any event, any error in this regard wasn't plain.  Defendant doesn't argue now, and didn't argue at trial, that his conduct fell outside the commonly understood meaning of "offers" (it obviously did).  As noted, his defense was that he hadn't *knowingly* offered the sexually exploitative material.  The instruction expressly included that elemental requirement, as did the elemental instruction for the offense.  Therefore, we see no reasonable possibility that the instruction contributed to the convictions under subsection (3)(b).

### b.     Directing a Verdict

¶ 57     Defendant argues that the instruction "told the jury that [his] alleged conduct satisfied the 'offer' element, thereby directing a verdict against" him.  We don't read the instruction that way.

¶ 58     The instruction described a factual circumstance that would constitute an offer.  But it didn't tell the jury that any of the facts included in the description had been proved, nor did it in any way remove from the jury its obligation to decide whether the prosecution had proved the elements of the offense.  The fact there was evidence from which the jury could have found the factual

29

circumstance existed doesn't mean the instruction directed a verdict. Were defendant's position correct, even an ordinary definitional instruction could be viewed as "directing a verdict" if evidence would support a finding that the definition was satisfied.

¶ 59 The case on which defendant primarily relies — *People v. Bertrand*, 2014 COA 142 — is different. In that case, an instruction *erroneously* explained the meaning of an element in a way that relieved the jury of the responsibility of determining an essential element of the offense. *Id.* at ¶¶ 18-20. The instruction before us didn't do that.

### III. Conclusion

¶ 60 The judgment is affirmed.

JUDGE HAWTHORNE and JUDGE RICHMAN concur.