The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 27, 2025

**2025COA22**

**No. 22CA1067, *People v. Trujillo* — Criminal Law — Model
Jury Instructions — Retaliation Against a Witness or Victim —
Requirements for Criminal Liability — Intentionally; Crimes —
Retaliation Against a Witness or Victim — Specific Intent**

A division of the court of appeals holds that the model jury

instructions for retaliation against a witness or victim and for

attempt to commit retaliation against a witness or victim, together

with the model jury instruction explaining the mental state

"intentionally," do not adequately inform the jury of the specific

intent required to commit retaliation against a witness or victim as

described in *People v. Hickman*, 988 P.2d 628 (Colo. 1999).

COLORADO COURT OF APPEALS                                    **2025COA22**

Court of Appeals No. 22CA1067
La Plata County District Court No. 20CR231
Honorable Suzanne F. Carlson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Erin Amber Trujillo,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE LUM
Freyre and Grove, JJ., concur

Announced February 27, 2025

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney
General, Abigail M. Armstrong, Assistant Attorney General Fellow, Denver,
Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Emily Hessler, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Erin Amber Trujillo, appeals her conviction for attempted retaliation against a witness or victim under section 18-8-706, C.R.S. 2024.  We conclude that the jury instructions for retaliation, attempt, and intent — which mirrored both the statutory language and the model instructions — did not adequately inform the jury of the specific intent required to commit retaliation as described in *People v. Hickman*, 988 P.2d 628 (Colo. 1999).  We therefore reverse and remand for a new trial.

## I.     Background

¶ 2     Trujillo's son, Lamont Smith, and Smith's former partner, Heather Baucom, got into an altercation while Smith drove with Baucom in Baucom's truck.  After Baucom indicated that she no longer wanted to continue their relationship, Smith became upset, punched the dashboard screen, and threw Baucom's cellphone out the window.  At some point during the argument, Baucom threw Smith's wallet out the window.  Smith refused to stop the truck or let Baucom out, so she jumped out at a red light.  Smith drove away in the truck while Baucom contacted police.

¶ 3     A highway patrol officer pulled Smith over, and Deputy Cory Lawson placed him under arrest for false imprisonment and

criminal mischief.  Trujillo arrived on the scene shortly after Smith was placed in Deputy Lawson's patrol car.  According to Deputy Lawson, Trujillo was "very irate."  She told the officers that she had spoken with witnesses who had been on the phone with Smith during the altercation, asserted that Baucom should be arrested instead for her role in the altercation and for committing domestic violence against Smith, and threatened to sue the officers for arresting Smith.  Trujillo also asked about Smith's wallet, which she believed had $1,500 in it.  Officers contacted Baucom for the wallet's possible location and relayed the information to Trujillo.

¶ 4     Baucom retrieved her truck and met her mother, Wendy Johnston, at a nearby gas station.  While there, they saw Trujillo parked across the highway.  Johnston heard Trujillo saying, "Where's the wallet?" which Johnston interpreted to mean that Trujillo was looking for Smith's wallet.

¶ 5     Baucom next drove to the police station to retrieve her phone, and Johnston followed in her own car.  As they drove, they saw Trujillo following them.  Trujillo followed closely behind Johnston — within three or four feet — and changed lanes when Baucom and Johnston did, but she didn't drive erratically or make any gestures.

2

Johnston felt nervous because she "didn't really know why [Trujillo] was doing that."

¶ 6     Baucom and her mother parked next to each other at the police station. Baucom got out of her truck and took her mother's phone to call the police. Trujillo pulled in behind the two parked vehicles. From her car, she said in an angry tone, "Where is [Smith]'s wallet or I'm going to beat your ass." Baucom kept her back to Trujillo and did not otherwise react to Trujillo's comment. Trujillo then drove away and was arrested shortly thereafter.

¶ 7     Baucom said she interpreted Trujillo's comment as a threat and that she was "scared and traumatized just by the whole day." Johnston said she thought Baucom seemed frightened by the episode. Trujillo, who testified in her own defense, denied threatening to "beat" Baucom and asserted that she followed Baucom because she wanted to know where Smith's wallet was.

¶ 8     The jury convicted Trujillo of attempt to commit retaliation against a witness or victim as a lesser included offense of retaliation against a witness or victim.

¶ 9     On appeal, Trujillo contends that (1) insufficient evidence supported her conviction; (2) the court erroneously declined to give

a defense-tendered jury instruction regarding the mental state for retaliation against a witness or victim; (3) the court erred by concluding that section 18-8-706 is not unconstitutional as applied because Trujillo's threat to "beat [Baucom's] ass" constituted both fighting words and a true threat; (4) the court erroneously refused to give a special unanimity instruction; and (5) the court erroneously admitted evidence in violation of CRE 404(b).

¶ 10    We first conclude that sufficient evidence supported Trujillo's conviction.  Next, however, we agree with Trujillo that the court erred by declining to give a jury instruction that explained the requisite mental state for retaliation, and we reverse on that basis. Finally, we agree in part with Trujillo's constitutional arguments, and we direct the trial court on remand to reconsider Trujillo's true threat arguments in light of the standard announced in *Counterman*

*v. Colorado*, 600 U.S. 66, 69 (2023).[1]  Given our resolution of these matters, we need not address Trujillo's remaining contentions.

## II.    Sufficiency of the Evidence

### A.    Interpretation of Section 18-8-706

¶ 11    Trujillo first contends that section 18-8-706 applies only when the target of the defendant's threats or harassment (1) has already testified or (2) has been scheduled to testify in a criminal proceeding.  Because Trujillo's conduct indisputably occurred before Baucom had been scheduled to testify, Trujillo argues that the evidence was insufficient as a matter of law.  We disagree.

#### 1.    Standard of Review

¶ 12    We review challenges to the sufficiency of the evidence de novo, "even when the defendant raises such issues for the first time

---

[1] Though we reverse on the jury instruction error, we address Trujillo's sufficiency contention because if the evidence was insufficient, she could not be retried.  *See McDonald v. People*, 2021 CO 64, ¶¶ 61-62 ("[I]f a defendant is entitled to reversal of her convictions on appeal due to insufficient evidence, the guarantees against double jeopardy in the United States and Colorado Constitutions may preclude retrial" (quoting *People v. Coahran*, 2019 COA 6, ¶ 40)).  And we address her constitutional arguments because if we agreed that the statute was unconstitutional as applied to her, she would not be subject to retrial based on her threat.  *See People v. Riley*, 708 P.2d 1359, 1362 (Colo. 1985).

on appeal and even if consideration of the issue involves a preliminary question of statutory construction." *McCoy v. People*, 2019 CO 44, ¶ 34.

¶ 13 "In construing a statute, we seek to effectuate the legislature's intent." *Johnson v. People*, 2023 CO 7, ¶ 15. "[W]e first consider the statute's language, assigning its words and phrases their plain and ordinary meanings." *McBride v. People*, 2022 CO 30, ¶ 23. "We read these words and phrases in context, and we construe them according to the rules of grammar and common usage." *Id.* As well, "we read the scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results." *Id.*

### 2. Analysis

¶ 14 As relevant here, a defendant commits retaliation against a witness or victim if she

> uses a threat [or] act of harassment . . .
> [which] is directed to or committed upon a
> witness in any criminal or civil proceeding; a
> victim of any crime; [or] an individual whom
> the [defendant] believes has been or would
> have been called to testify as a witness in any

> criminal or civil proceeding . . . as retaliation
> or retribution against such witness or victim.

§ 18-8-706(1).

¶ 15    In *Hickman,* the Colorado Supreme Court interpreted section

18-8-706 and explained that the crime of retaliation requires proof

that

> (1) the defendant threatened or committed
> harmful or injurious conduct towards a person
> protected by the statute; (2) the defendant
> made [the] threat or engaged in the conduct
> because [she] knew or believed that the victim
> of the threat or conduct was a member of the
> class of protected persons; and (3) the
> defendant intended the threat or conduct as
> retaliation or retribution for [her] perception of
> the victim's relationship to criminal
> proceedings.

*Hickman,* 988 P.2d at 644.

¶ 16    *Hickman* also explained that the specific intent required to

commit retaliation is the "intent to retaliate or to seek retribution

against a person protected by the statute because of that person's

relationship to a criminal proceeding." *Id.* at 645.  Nothing about

this language suggests that the victim must be scheduled to testify

for the statute to apply.

¶ 17    Moreover, Trujillo's interpretation renders parts of the statute superfluous.  Under section 18-8-706, the protected classes include both "a victim of any crime" and "an individual whom the [defendant] believes has been or would have been called to testify as a witness in any criminal or civil proceeding or a victim of any crime."  If we interpret the statute to apply only when a victim has been scheduled to testify, only the second of these classes would be necessary, and the first would be redundant.  We must therefore reject Trujillo's proposed statutory construction.  *See McBride*, ¶ 23.

## B.    Specific Intent Evidence

¶ 18    Trujillo also contends that there was insufficient evidence for a jury to conclude beyond a reasonable doubt that she had the specific intent to retaliate or seek retribution against Baucom because of Baucom's status as the victim of a crime.[2]  We disagree.

¶ 19    In reviewing the sufficiency of the evidence, we review "whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant's conviction."

---

[2] To be convicted for attempt, a defendant must "act[] with the kind of culpability otherwise required for commission of an offense." § 18-2-101(1), C.R.S. 2024.

*Johnson*, ¶ 13 (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)).  We consider whether the relevant evidence, "when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt."  *Id.* (quoting *Clark*, 232 P.3d at 1291).

¶ 20     "[W]e give the prosecution the benefit of every reasonable inference that may fairly be drawn from the evidence . . . ."  *McBride*, ¶ 38.  However, those inferences "must be supported by a 'logical and convincing connection between the facts established and the conclusion inferred.'"  *Id.* (quoting *People v. Donald*, 2020 CO 24, ¶ 19).  "A verdict cannot rest on guessing, speculation, conjecture, or a mere modicum of relevant evidence."  *Id.*

¶ 21     From the evidence presented, a jury could infer that Trujillo (1) knew Smith had been arrested because of the altercation with Baucom; (2) thought that Smith was innocent; (3) thought that Baucom, rather than Smith, should have been arrested; and (4) was angry that Smith had been arrested.  Shortly after expressing all these sentiments to law enforcement, Trujillo began following closely behind Baucom and Johnston, tailed them to a police

9

station, and threatened violence against Baucom. This is sufficient for a jury to infer that Trujillo followed and threatened Baucom with the intent to retaliate against her because she was angry about Baucom's status as a victim in Smith's alleged crime.

¶ 22    We agree with Trujillo that the jury also heard evidence that she followed and threatened Baucom because she wanted to retrieve Smith's wallet. However, to convict Trujillo, the jury wasn't required to find that Baucom's status as a victim was the sole (or even the primary) motivation for her retaliatory conduct. Evidence of an additional motivation (trying to find the wallet or because she was upset that Baucom threw it out the window) doesn't mean that Trujillo lacked any intent to retaliate because of Baucom's relationship to Smith's criminal proceedings. We may not serve as the "thirteenth juror," even if we may have reached a different outcome, and we must construe all inferences from conflicting evidence in favor of the prosecution. *Butler v. People*, 2019 CO 87, ¶ 20 (quoting *People v. Sprouse*, 983 P.2d 771, 778 (Colo. 1999)).

### III. Specific Intent Jury Instruction

¶ 23    Trujillo contends the trial court erred by refusing to give a defense-tendered instruction on the specific intent requirement for retaliation.  We agree.

### A. Standard of Review

¶ 24    We review de novo whether the jury instructions, when taken as a whole, accurately inform the jury of the law.  *People v. Theus-Roberts*, 2015 COA 32, ¶ 18; *see also Garcia v. People*, 2023 CO 30, ¶ 9.  We review a trial court's decision about whether to give a particular jury instruction for an abuse of discretion.  *People v. Robles-Sierra*, 2018 COA 28, ¶ 50.  The court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair, or if it misconstrues or misapplies the law."  *People v. Quillen*, 2023 COA 22M, ¶ 14.

### B. Applicable Facts

¶ 25    The trial court gave the following instruction to the jury regarding retaliation:

> The elements of the crime of retaliation against
> a witness or victim are:
>
> 1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. used a threat or an act constituting the crime of harassment,

4. directed to, or committed upon, a witness in any criminal proceeding, a victim of any crime, an individual whom the defendant believed had been or would be called to testify as a witness in any criminal proceeding,

5. as retaliation or retribution against the witness or victim.

The jury was also instructed that, to be convicted of attempted retaliation, Trujillo had to act "with intent."

¶ 26     Finally, the jury was given the model instruction for specific intent:

A crime is committed when the defendant has committed a voluntary act prohibited by law, together with a culpable state of mind.

"Voluntary act" means an act performed consciously as a result of effort or determination.

Proof of the voluntary act alone is insufficient to prove that the defendant had the required state of mind.

The culpable state of mind is as much an element of the crime as the act itself and must be proven beyond a reasonable doubt, either by direct or circumstantial evidence.

In this case, the applicable state of mind is explained below:

A person acts "intentionally" or "with intent" when his conscious objective is to cause the specific result proscribed by the statute defining the offense. It is immaterial to the issue of specific intent whether or not the result actually occurred.

*See* COLJI-Crim. G1:01 (2024).

¶ 27    Trujillo's proposed and rejected instruction read,

In order to convict Ms. Trujillo of retaliation of [sic] a witness, the prosecution must prove that Ms. Trujillo intended the threat or act of harassment as retaliation or retribution because of Ms. Trujillo's perception of Ms. Baucom's relationship to a criminal proceeding. Only proving that Ms. Trujillo performed a threat or act of harassment, without also proving that those actions were intended as retaliation against a victim or witness, is not enough to convict Ms. Trujillo of retaliation of [sic] a witness.

13

## C.    Analysis

### 1.    Incomplete Information About Specific Intent

¶ 28    We agree with Trujillo that the given instructions did not adequately inform the jury of the specific intent requirement for retaliation against a witness or victim.[3]

¶ 29    As discussed above, *Hickman* explained that the crime of retaliation requires the specific intent to "retaliate or to seek retribution against a person protected by the statute because of that person's relationship to a criminal proceeding."  988 P.2d at 645.  In other words, the defendant must intend to retaliate against the victim or witness *for a specific reason*: because of that person's "status" as a witness to or victim of a crime.  *Id.* at 644.

¶ 30    The "intent" instruction informed the jury that it had to find, as an element of the offense, that Trujillo had a "conscious objective to cause the specific result proscribed" by the elemental instruction. And the elemental instruction informed the jury of the proscribed

---

[3] Because the mental state required to commit attempted retaliation is the same as the mental state required to commit retaliation, we do not distinguish between those offenses for the purposes of this analysis.  *See People v. Hoggard*, 2017 COA 88, ¶ 44 ("[A]ttempt usually shares the same mental state required for the predicate offense."), *aff'd*, 2020 CO 54; *see also* § 18-2-101(1).

14

conduct and result: A person may not "use a threat or an act constituting harassment," directed to or committed upon a witness or victim, as retaliation or retribution against the witness or victim.

¶ 31    The problem is that these instructions, even when read together, did not inform the jury that the retaliation or retribution must be *because of* the witness's or victim's status as such. Thus, the instructions could have led the jury to convict even if Trujillo's retaliatory conduct was motivated by something other than the witness's or victim's "relationship to a criminal proceeding." *Id.* at 645.

¶ 32    For example, a person who sees a crime victim steal her parking spot outside the courthouse and then harasses the victim as retaliation for the parking spot theft does not commit the crime of retaliation against a witness or victim because the retaliation was for the taking of the parking spot, not for the victim's "relationship to a criminal proceeding." *Id.* Yet under the instructions given here, the jury could have convicted because it could have found that the defendant had a "conscious objective" to "use an act . . . constituting harassment" that was "committed upon a . . . victim" "as retaliation . . . against the victim."

15

¶ 33 Trujillo's proposed instruction would have cured this defect because it would have informed the jury that it was required to find that she "intended the threat or act of harassment as retaliation or retribution *because of Ms. Trujillo's perception of Ms. Baucom's relationship to a criminal proceeding.*" (Emphasis added.)

¶ 34 The People contend that the theory of defense instruction and defense counsel's closing argument adequately informed the jury of the intent element. We disagree. The theory of defense instruction said that Trujillo "never intended to threaten or harass Ms. Baucom as an act of retaliation for Ms. Baucom being a victim in another case," and counsel repeated those sentiments during closing argument. However, neither the theory of defense instruction nor closing argument made the connection that *Hickman* requires: that a guilty verdict could only be premised on a finding that Trujillo intended to retaliate against Baucom for Baucom's status as a victim of or witness to Smith's alleged crime.

¶ 35 We acknowledge the People's argument that "[a] jury instruction [like the one here] that tracks the exact language of a statute is unlikely to mislead the jury on the state of the law." *Galvan v. People*, 2020 CO 82, ¶ 37 (quoting *People in Interest of*

16

*J.G.*, 2016 CO 39, ¶ 42). Likewise, the instructions given in this case track the model jury instructions, which "have been approved in principle by [the supreme] court and serve as beacon lights to guide trial courts." *Id.* at ¶ 38; *see* COLJI-Crim. 8-7:08 (2024). But *unlikely* doesn't mean *never*, and the model instructions are not "a safe harbor that insulates instructional error from reversal." *Galvan*, ¶ 38 (quoting *Garcia v. People*, 2019 CO 64, ¶ 22). Because *Hickman* requires not only that the defendant specifically intend to retaliate but also that she intend to retaliate for a specific reason, 988 P.2d at 645, this is a rare case where the model instructions for retaliation and intent don't adequately inform the jury of the law.

¶ 36 To the extent the People contend that *Hickman* doesn't require additional instructions because the supreme court concluded that the specific intent requirement is inherent in the "plain meaning" of the statutory terms, *id.*, we disagree. While the supreme court gleaned from the statute a requirement that the defendant must specifically intend to retaliate against the victim because of the victim's relationship to criminal proceedings, a layperson would be unable to do the same without additional instructions, given the language in section 18-8-706.

17

¶ 37    Because the instructions didn't adequately inform the jury of the law and because the defense-tendered instruction would have cured the defect, we must conclude that the court abused its discretion by declining to give the instruction.[4]

### 2.    Not Harmless Beyond a Reasonable Doubt

¶ 38    Because the instructional error resulted in the jury receiving incomplete information about an element of the offense — the culpable mental state — the error is "of constitutional magnitude." *Griego v. People*, 19 P.3d 1, 7 (Colo. 2001) (holding that a trial court's failure to instruct the jury on the definition of "knowingly" was constitutional in nature).

¶ 39    Because the error was preserved, we review for constitutional harmless error. To be constitutionally harmless, the court must be "confident beyond a reasonable doubt that the error did not contribute to the verdict obtained." *Id.* at 9. The inquiry is not whether "a guilty verdict would surely have been rendered" in a trial

---

[4] While legal error is necessarily an abuse of discretion, we recognize that (1) the trial court's decision was likely informed by the cases that caution against crafting jury instructions from caselaw, *see, e.g., People v. Espinosa*, 2020 COA 63, ¶ 15; and (2) the court did not have the benefit of this opinion when it issued its ruling.

without the error but whether "the guilty verdict actually rendered in this trial was surely unattributable to the error." *Id.* (quoting *Blecha v. People*, 962 P.2d 931, 942 (Colo. 1998)).

¶ 40     The instructional error in this case was not harmless beyond a reasonable doubt. While the evidence was sufficient for a jury to conclude that Trujillo acted with the intent to retaliate against Baucom for being a victim, it was hardly overwhelming. *See Auman v. People*, 109 P.3d 647, 665 (Colo. 2005) (noting that instructional error doesn't involve a sufficiency analysis but instead asks whether evidence of guilt is overwhelming).

¶ 41     Moreover, the lack of specific intent was Trujillo's primary defense: She argued that she was motivated by the loss of the wallet and not by Baucom's status as a victim. Because the jury wasn't instructed that the reason for the retaliation had to be Baucom's relationship to Smith's criminal proceedings, it could have concluded that Trujillo was guilty because she intended her conduct as retaliation for Baucom's conduct and not because Baucom was a victim in Smith's criminal proceeding.

¶ 42     To the extent the People argue that the error is constitutionally harmless because the wallet throwing is inextricably intertwined

19

with Baucom's relationship to the criminal proceedings, we disagree. Baucom's status as an alleged victim of false imprisonment and criminal mischief is independent of the fact that she threw Smith's wallet out the window. She is an alleged victim, not because she threw the wallet, but because Smith allegedly punched her dashboard, threw her cellphone out the window, and refused to let her out of the truck.

¶ 43     In short, the instructional error "effectively omitted an explanation that the law requires" on an issue that was both "vigorously contested" by Trujillo and a very close call. *Id.* at 669-71 (reversing felony murder conviction for *plain* instructional error where the instruction misdescribed the intent element of the underlying felony, the defense centered on intent, and the evidence of guilt was not overwhelming).

¶ 44     For these reasons, we cannot conclude that the jury's guilty verdict was "surely unattributable" to the instructional error. *Griego*, 19 P.3d at 9 (quoting *Blecha*, 962 P.2d at 942).

IV.     Constitutional Arguments

¶ 45     Trujillo next contends that section 18-8-706 is unconstitutional as applied to her because it penalized protected

speech, specifically her statement that she was "going to beat [Baucom's] ass." She argues that the district court erred by concluding that her speech was unprotected because it constituted fighting words and a true threat. We address each contention in turn.

## A.     Standard of Review

¶ 46     To prevail on an as-applied constitutional challenge, the defendant must show that the "statute is unconstitutional 'under the circumstances in which the [defendant] has acted.'" *People v. Maxwell*, 2017 CO 46, ¶ 7 (quoting *Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1085 (Colo. 2011)). Statutes are presumed to be constitutional, and the defendant has the burden of proving the statute is unconstitutional beyond a reasonable doubt. *People v. Nozolino*, 2014 COA 95, ¶ 19 (citing *People v. Gutierrez*, 622 P.2d 547, 555 (Colo. 1981)).

¶ 47     We review an as-applied challenge to a statute's constitutionality de novo. *People v. Perez-Hernandez*, 2013 COA 160, ¶ 10. "[W]here First Amendment concerns are implicated, the court has an obligation to make an independent review of the record to assure that the judgment does not impermissibly intrude

on the field of free expression." *People v. Chase*, 2013 COA 27, ¶ 70.

### B. Fighting Words

### 1. Applicable Law

¶ 48    The United States and Colorado Constitutions prohibit laws that abridge or impair the freedom of speech.  U.S. Const. amend. I; Colo. Const. art. II, § 10.  "The protections afforded by the First Amendment, however, are not absolute."  *Nozolino*, ¶ 20.  Thus, the legislature "may regulate certain categories of expression consistent with the Constitution."  *Id.*

¶ 49    One such category is fighting words — "words which, by their very utterance, tend to excite others to unlawful conduct or provoke retaliatory action amounting to a breach of the peace."  *People v. Smith*, 862 P.2d 939, 943 (Colo. 1993).  To qualify as fighting words, "it is not enough that words, gestures, or displays 'stir[] the public to anger,' 'invite dispute,' or 'create a disturbance'; they must 'produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" *People in Interest of R.C.*, 2016 COA 166, ¶ 10 (alteration in original) (quoting *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949)).

¶ 50    To determine whether an expression constitutes fighting words, we must also consider the context in which the language is used. *People in Interest of K.W.*, 2012 COA 151, ¶ 30. "[A] defendant's words are considered as a 'package' in combination with conduct and physical movements, viewed in light of the surrounding circumstances." *R.C.*, ¶ 22 (alteration in original) (quoting *In re Welfare of M.A.H.*, 572 N.W.2d 752, 757 (Minn. Ct. App. 1997)).

## 2.    Analysis

¶ 51    Trujillo contends that her threat to "beat [Baucom's] ass" doesn't rise to the level of fighting words. We agree.

¶ 52    Some of Trujillo's conduct before and during her statement was aggressive. She delivered her statement in person, in a loud and angry tone, immediately after having closely followed Baucom and Johnston — within three to four feet of Johnston's car — from the gas station to the police station. But while hostile or threatening conduct can be one factor in the fighting words analysis, *see id.* at ¶ 24 (holding that speech wasn't "fighting words" in part because it "was not accompanied by any hostile, aggressive, or threatening language or conduct"), the question is not whether a

23

reasonable person would feel threatened or angry. It is whether the statement and surrounding circumstances are "likely to incite a reasonable person . . . to *immediate physical violence.*" *Id.* at ¶ 15 (emphasis added).

¶ 53 Balancing Trujillo's provocative conduct with the other circumstances surrounding the encounter, we can't conclude that her statement rises to that level. While Trujillo followed Baucom and delivered her statement in person, Trujillo didn't get out of her car, she made the statement only once, and she drove away shortly after. *Cf. K.W.,* ¶ 37 (affirming juvenile's conviction for disorderly conduct where the juvenile repeatedly yelled obscene statements, was "hostile and threatening, refused to leave the scene, and attempted to reach [other] students," requiring a security officer to intervene). The parties were also in a police station parking lot, and Baucom was on the phone with police when Trujillo spoke, reducing the likelihood that a reasonable person in Baucom's position would react violently. Finally, there was no evidence that Trujillo's statement caused any breach of the peace; Baucom didn't react violently or even turn around. *See R.C.,* ¶ 24 (noting that target's

24

reaction, while not determinative, is relevant in determining whether the speech constitutes fighting words).

¶ 54 Accordingly, we conclude that the trial court erred by ruling that Trujillo's statement constituted fighting words.

## C. True Threat

¶ 55 Like fighting words, true threats of violence are outside the bounds of constitutionally protected speech. *People in Interest of R.D.*, 2020 CO 44, ¶ 1, *abrogated by Counterman*, 600 U.S. 66. The trial court concluded that Trujillo's statement was a true threat because, "considered in context and under the totality of the circumstances, an intended or foreseeable recipient would reasonably perceive [it] as a serious expression of intent to commit an act of unlawful violence." *Id.* at ¶ 4. At the time of the court's ruling, the perception of the statement by an objective, "intended or foreseeable recipient" was the only consideration required by Colorado law. *Id.*

¶ 56 After Trujillo's trial but before the briefing in this appeal, the United States Supreme Court held that, in true threat cases, the First Amendment also requires the People to demonstrate that the defendant has some subjective understanding of the statement's

threatening nature.  *See Counterman*, 600 U.S. at 79.  The Supreme Court concluded that recklessness is the appropriate mens rea.  *Id.*  Thus, a statement is a true threat if the defendant consciously disregards a substantial and unjustifiable risk that her communications will be viewed as threatening.  *Id.*

¶ 57    The extent of a defendant's subjective understanding is a factual finding, which we cannot make for the first time on appeal.  *See People v. A.W.*, 982 P.2d 842, 852 (Colo. 1999) ("Appellate courts are not empowered to make factual findings.").  Therefore, we express no opinion about whether Trujillo's statement is a true threat.  On remand, the trial court must reassess Trujillo's true threat arguments in light of the *Counterman* decision.[5]

## V.    Other Issues

¶ 58    Because we reverse the judgment on other grounds, we do not decide Trujillo's remaining contentions.

---

[5] Because we reverse on other grounds, we do not decide Trujillo's unpreserved argument that the question of whether her statement was a true threat should have been submitted to the jury.  Trujillo is free to raise this contention on remand.

## VI. Disposition

¶ 59 We reverse the judgment of conviction and remand for a new trial.

JUDGE FREYRE and JUDGE GROVE concur.