22CA0848 Peo v Fleming 04-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0848
Garfield County District Court No. 18CR513
Honorable John F. Neiley, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kasey Lynn Fleming,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GROVE
Yun and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 2, 2026

---

Philip J. Weiser, Attorney General, Cata A. Cuneo, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mackenzie R. Shields, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Kasey Lynn Fleming, appeals the judgment of conviction entered after a jury found him guilty of two counts of sexual assault on a child.  We affirm.

## I.     Background

¶ 2     A reasonable jury could have found the following facts based on the evidence presented at trial.

¶ 3     T.L., age nine, and L.L., age eleven, were at a store with their mother, D.L., and a friend, M.I.  In the store, the children separated from D.L. and went to the toy section.  There, a man grabbed T.L.'s butt then immediately apologized.  L.L. and M.I. did not see the man touch T.L., but shortly after, the man also grabbed L.L.'s butt.  When L.L. told T.L. that the man grabbed her butt, T.L. thought it was not an accident.  The girls called D.L. and told her what happened.  D.L. then told the store security, and security — upon looking through footage — recognized the man matching the girls' description as Fleming, the husband of one of the store's employees.

¶ 4     Fleming was charged with two counts of sexual assault on a child, along with five habitual criminal counts.  A jury found

Fleming guilty on both sexual assault counts, and the court subsequently adjudicated him a habitual criminal. The court sentenced Fleming to two consecutive mandatory terms of twenty-four-years-to-life in the custody of the Department of Corrections.

¶ 5      Fleming now appeals, arguing that (1) the court violated his statutory and constitutional rights to a speedy trial; (2) the prosecutor committed misconduct amounting to plain error in closing argument; and (3) the Colorado Sex Offender Lifetime Supervision Act (SOLSA) is unconstitutional facially and as applied.

## II.      Speedy Trial

¶ 6      Fleming contends that the trial court violated his statutory and constitutional speedy trial rights. We conclude that Fleming waived the statutory speedy trial issue and that there was no violation of Fleming's constitutional speedy trial right.

### A.      Additional Facts

¶ 7      Fleming entered not guilty pleas to two counts of sexual assault on a child on July 11, 2019. He requested continuances in October 2019 and January 2020. Then, in March 2020, defense counsel moved to vacate the jury trial because the parties had reached a disposition. However, instead of a disposition, Fleming

moved for a substitution of counsel, and the parties agreed to another continuance.

¶ 8    In May and June 2020, Fleming's new counsel requested two more continuances; the prosecution objected to the second request. In July 2020, Fleming's counsel sought yet another continuance, which the prosecution again opposed. The court set a new trial date for November 2020, but that setting was pushed back to April 26, 2021, due to COVID-19.

¶ 9    On April 19, 2021 — a week before the April 26 trial date and less than three weeks before the statutory speedy trial deadline — the prosecutor moved for a continuance based on the purported unavailability of two material witnesses. According to the prosecutor, T.L. and L.L.'s father had suffered two heart attacks in December 2020, and the family had made plans "to go on vacation with their father who had almost died" during the trial dates. The prosecutor informed the court that he had "initiated [a] subpoena request" for T.L. and L.L. several months earlier, and that he had become aware of the family's vacation plans "four to six weeks" before the hearing. But he went on to explain that he had chosen not to "personally serve [the father with the subpoenas] at his place

of business . . . because of the age of the alleged victims, because of the reason behind the request to go some place with his family."

¶ 10 Over defense counsel's objection, the trial court found that the prosecution had established good cause for a continuance under section 18-1-405(6)(g)(I), C.R.S. 2025. At a setting hearing the next week, defense counsel renewed his objection to the continuance and informed the court he was "planning on filing a formal motion or a written motion on speedy trial outlining why in our judgment speedy trial has run," as well as addressing why, in his view, the prosecutor had not exercised due diligence to ensure the attendance of T.L. and L.L. at trial.

¶ 11 Fleming's trial finally began on August 9, 2021. Despite his earlier representations, defense counsel did not move to dismiss the case on speedy trial grounds before the start of trial. However, almost five months after trial, Fleming — now represented by the public defender — filed a motion to dismiss for a statutory speedy trial violation. In this motion, the public defender also alleged for the first time that the court and prosecution had violated Fleming's constitutional speedy trial right. The court denied the motion, ruling that Fleming had waived his statutory right to speedy trial by

4

failing to seek dismissal before the trial began. *See* § 18-1-405(5). Turning to Fleming's constitutional speedy trial claim, the court concluded that Fleming had not met his burden to demonstrate that his constitutional speedy trial right was violated.

### B. Statutory Speedy Trial

¶ 12    We do not reach the merits of Fleming's statutory speedy trial claim because he waived it by failing to move for dismissal on that ground before trial began.

¶ 13    Under Colorado's speedy trial statute, if a defendant's case "is not brought to trial . . . within six months from the date of the entry of a plea of not guilty, . . . the pending charges shall be dismissed" unless the statute provides otherwise. § 18-1-405(1); *see People v. Sherwood*, 2021 CO 61, ¶ 21. "The burden of compliance with the speedy trial requirement . . . rests wholly with the People and the trial court." *Sherwood*, ¶ 23.

¶ 14    A defendant waives his statutory speedy trial right, however, by failing to move for dismissal before trial. *See* § 18-1-405(5); Crim. P. 48(b)(5); *People v. McMurtry*, 122 P.3d 237, 242 (Colo. 2005); *see also People v. Abdu*, 215 P.3d 1265, 1269 (Colo. App.

2009) (appellate challenge barred because defendant never filed a motion to dismiss on speedy trial grounds).

¶ 15     While defense counsel objected to a setting beyond the statutory speedy trial deadline, he never moved to dismiss Fleming's case on speedy trial grounds before trial began.  His "[f]ailure to so move" was "a waiver" of Fleming's statutory speedy trial rights. § 18-1-405(5).  To the extent that Fleming argues that his counsel's objections were the functional equivalent of a motion to dismiss and sufficiently preserved the issue for appeal, we disagree.  *See Abdu,* 215 P.3d at 1269 (declining "to construe defendant's statement as a motion to dismiss on speedy trial grounds"); *People in Interest of J.M.N.,* 39 P.3d 1261, 1263 (Colo. App. 2001) (concluding that, even where the juvenile defendant "informed the court that he would not waive his statutory right" to speedy trial, he nevertheless waived it "because [he] failed to move for dismissal before the adjudicatory trial began").

¶ 16     We are not persuaded otherwise by Fleming's argument that counsel's failure to timely file a motion to dismiss amounted to a forfeiture rather than a waiver.  *See People v. Rediger,* 2018 CO 32, ¶ 40 (forfeited claims may be reviewed on appeal but waiver

6

extinguishes error and therefore appellate review). Counsel can waive statutory rights. *Finney v. People*, 2014 CO 38, ¶ 16. And, unlike the waiver of a fundamental constitutional right, which requires "the *intentional* relinquishment of a *known* right or privilege," *Rediger*, ¶ 39 (citation omitted), the waiver of a statutory right demands a less stringent showing, *People v. Roberson*, 2025 CO 30, ¶ 13 ("When the right at issue is a statutory right, waiver 'must be voluntary, but need not be knowing and intelligent.'" (quoting *Finney*, ¶ 16)).

¶ 17    Moreover, while "[w]aiver can be demonstrated through explicit words or actions," *id.*, it can also be implied, "as when a party engages in conduct that manifests an intent to relinquish a right or privilege or acts inconsistently with its assertion," *Forgette v. People*, 2023 CO 4, ¶ 28. Here, even assuming counsel had no obvious strategic reason for waiving Fleming's statutory speedy trial right, there is little doubt that he acted inconsistently with the assertion of that right by failing to move for dismissal after repeatedly expressing his intent to do so. *Cf. Roberson*, ¶ 17 (finding implied waiver of a statutory right to a timely restitution hearing where the defendant failed to object when the hearing "fell outside of the

7

ninety-one-day deadline and when the statutory deadline had been expressly mentioned at the sentencing hearing").[1]

¶ 18     In any event, the plain language of section 18-1-405(5) and Crim. P. 48 is clear: failure to move for dismissal before trial is a "waiver." To hold otherwise by characterizing Fleming's failure to timely seek dismissal as a "forfeiture" would be to ignore the text of the statute and the accompanying procedural rule. Because "we must avoid [statutory] constructions that would render any words or phrases superfluous," *McCoy v. People*, 2019 CO 44, ¶ 38, we cannot disregard the statute's declaration that a failure to timely seek dismissal amounts to a waiver.

### C.     Constitutional Speedy Trial

¶ 19     Fleming also contends that the trial court and prosecution violated his constitutional right to a speedy trial. We disagree.

---

[1] To the extent Fleming suggests that the failure to file a motion to dismiss prior to trial amounted to ineffective assistance of counsel, any challenge to his conviction based on that argument would be better suited for a Crim. P. 35(c) motion. *See People v. Kelling*, 151 P.3d 650, 655 (Colo. App. 2006) ("[B]ecause of the need for a developed factual record, an ineffective assistance of counsel claim should ordinarily be raised in a postconviction proceeding, not on direct appeal.").

## 1. Applicable Law

¶ 20     The United States and Colorado Constitutions guarantee all criminal defendants the right to a speedy trial.  U.S. Const. amend. VI; Colo. Const. art. II, § 16.  We apply a four-factor balancing test to assess whether a defendant's constitutional speedy trial rights were violated, considering the following: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant.  *Moody v. Corsentino*, 843 P.2d 1355, 1363 (Colo. 1993) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)); *see also People v. Chavez*, 779 P.2d 375, 376 (Colo. 1989) (noting the *Barker* test also governs the determination of a speedy trial claim under the Colorado Constitution).  The defendant bears the burden of establishing that his constitutional speedy trial rights have been denied.  *Moody*, 843 P.2d at 1363.

¶ 21     Fleming's constitutional speedy trial claim is unpreserved because he raised it for the first time in a post-trial motion to dismiss.  However, unpreserved constitutional errors may be reviewed for the first time on appeal.  *Reyna-Abarca v. People*, 2017 CO 15, ¶ 37.  Accordingly, we review Fleming's constitutional

speedy trial claim for plain error. *See People v. Jompp*, 2018 COA 128, ¶ 14.

## 2. Analysis

¶ 22 We conclude that the trial court did not violate Fleming's constitutional right to a speedy trial.

¶ 23 First, we consider the length of the delay. Although Fleming's trial took place nearly three years after he entered his not guilty plea, more than two and a half years of that delay was attributable to the defense or to COVID-19. *See* § 18-1-405(6)(f) (delays to accommodate defense counsel are attributable to the defendant); *see also United States v. Keith*, 61 F.4th 839, 853 (10th Cir. 2023) (delays caused by COVID-19 cannot "fairly be attributed" to either the prosecution or defense). The prosecution sought only one continuance, which moved Fleming's trial from April 2021 to August 2021 — a fourth month delay. This relatively short delay weighs against finding a constitutional speedy trial violation.

¶ 24 Second, we consider the reason for the delay. Again, because the delays prior to April 2021 were attributable to the defense or to COVID-19, they weigh against a constitutional violation. *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (delay caused by the defense "weighs

10

against the defendant"). Only the final April 2021 continuance is attributable to the prosecution. We do have concerns about that continuance, and question whether the prosecutor exercised due diligence by choosing not to interfere with the victims' family vacation plans. Nonetheless, the delay attributable to the sole continuance requested by the prosecution amounted to only four months.

¶ 25     Third, we consider Fleming's assertion of the right. Although Fleming did not file a motion to dismiss on speedy trial grounds before trial began, he did assert his right through multiple objections and a post-trial motion. Thus, Fleming's assertion of his right weighs slightly in favor of a speedy trial violation.

¶ 26     Fourth, we consider whether Fleming was materially prejudiced by the delay. Prejudice is assessed by weighing three interests that the right to speedy trial protects: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Moody*, 843 P.2d at 1367 (quoting *Barker*, 407 U.S. at 532). As to the first interest, Fleming was out

on bond for at least part of the pretrial period.[2]  This weighs against prejudice as he did not experience "oppressive pretrial incarceration."  *Id.*  As to the second, although we recognize that a lengthy pretrial delay may generate anxiety, Fleming offered no explanation of how the delay caused him any greater anxiety or concern than the average defendant.  Furthermore, he failed to provide any specific examples of how his anxiety, concern, or distress prejudiced him.  *See People v. Nelson*, 2014 COA 165, ¶ 41 (noting that the defendant "presented no evidence or offer of proof to establish any such anxiety or concern beyond that normally to be expected from the fact of a criminal prosecution").  As to the third, while a delay of almost three years certainly could have affected Fleming's ability to defend himself, most of the delay was attributable to the defense and nothing in the record supports that a single four-month continuance requested by the prosecution impaired Fleming's case.

---

[2] The record suggests that, during periods that he was not out on bail, Fleming was incarcerated on other charges at various times during the pendency of his case.  As these circumstances were unrelated to the charges at issue here, they have no bearing on whether Fleming suffered oppressive pretrial incarceration.

¶ 27    Balancing the four *Barker* factors, we conclude the court did not violate Fleming's constitutional right to a speedy trial.

### III.    Prosecutorial Misconduct

¶ 28    Fleming contends that the prosecution committed misconduct during closing argument. We reject Fleming's argument under plain error review.

### A.    Standard of Review and Applicable Law

¶ 29    We review prosecutorial misconduct that violates a defendant's constitutional rights de novo. *People v. Castro*, 2022 COA 101, ¶ 21. In doing so, we consider whether the alleged misconduct was improper based on the totality of the circumstances and whether it warrants reversal. *People v. Van Meter*, 2018 COA 13, ¶ 23. When a defendant fails to object to the alleged misconduct, as here, we review for plain error, reversing only if the error is obvious and substantial. *Hagos v. People*, 2012 CO 63, ¶ 14. To rise to the level of plain error, prosecutorial misconduct must be flagrant or glaringly improper and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004).

¶ 30 Although the prosecution has wide latitude in the language and style of closing argument, *People v. Rhea*, 2014 COA 60, ¶ 46, prosecutors generally cannot argue that the jury must find a witness lied in order to acquit the defendant, *People v. Cuellar*, 2023 COA 20, ¶ 67 (collecting cases). However, "because arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of the doubt when their remarks are ambiguous or simply inartful." *People v. Samson*, 2012 COA 167, ¶ 30.

## B. Analysis

¶ 31 During closing argument, the prosecutor told the jury that the defense's theory was that the incident "was a misunderstanding" and that "grabbing a child's butt and squeezing it is not a knowing act; it's an accident, and it wasn't for the purpose of sexual gratification." The prosecutor continued:

> But if it's not a misunderstanding, then the girls and the mom have collaborated and created everything out of thin air to falsely accuse a man . . . So you got to ask yourself: Who would reasonably become a character arsonist, light a match, throw it, if they were making it all up? If they were collaborating, if they were game planning on how to ruin someone, who lights a match, if that's their

14

intent and doesn't get out of there? Because it's about to burn, and I don't want to be here when the heat becomes intense and the flames get hot. Who remains there in that heat, in those flames, for three years to come to you and testify in front of you and in front of their assaulter and the man that assaulted their daughter? That's a decision you'll have to make, whether that's common sense.

I submit to you what you have to believe to conclude the accused is not guilty is that these three girls and the mom of two of them made this all up. They created it out of thin air. That when a 30-year-old man grabs and squeezes the butts of a nine and eleven-year-old girl inside Target, didn't know what he was doing when he grabbed and squeezed. And that even if he did know, he didn't have sexual gratification. That's what you got to believe based on the law the court has given you.

¶ 32 During the subsequent discussion of the elements of sexual assault, the burden of proof, and other matters, the prosecutor made several other allegedly improper statements:

And if you consider all the evidence, you have to conclude, unless you decide it's made up, you can touch little girls in Target on accident, you can squeeze little girls' butts in Target on accident, and that that's not a knowing act and that it wasn't done for the purpose of sexual gratification or arousal, if you can't believe that then you have to believe he's guilty, period.

. . .

15

And to come to a conclusion that these little girls and their mom somehow huddled up before they got to Target and orchestrated this whole thing and would put their family and themselves through the next three years of criminal justice process, you'd have to speculate why someone would do that. You would have to imagine.

. . .

If you believe the girls, . . ., that [] Fleming grabbed and squeezed their butts, there is no rational or reasonable or common sense explanation for a thirty-year-old man to do such a thing other than for some sexual thrill or arousal or gratification.

. . .

I'm going to ask you to decide who to believe, and that's your job, not mine. I have argued to you today who I'm asking you to believe, but that's your decision. Nothing I have said is evidence. It's argument.

. . .

But once you look at all the evidence and once you apply your common sense, there is no other conclusion that a man thirty years old, who in broad daylight outrageously and brazenly grabs and squeezes the butts of two little girls, does so for any other reason than sexual thrill, sexual gratification. And in such a case he's guilty beyond a reasonable doubt because the girls who had it happen to them came in here and told you under oath that it happened, and they subjected themselves to be in the presence of their assaulter, and they

16

subjected themselves to cross-examination.
He's guilty.

¶ 33    Defense counsel did not object to any of these statements.  On appeal, however, Fleming contends that the prosecutor distorted the burden of proof by suggesting to the jurors that they could acquit him only if they found that the prosecution's witnesses were lying.

¶ 34    Even assuming the prosecutor committed obvious error by making these statements, we cannot conclude that they so undermined the fundamental fairness of Fleming's trial as to cast serious doubt on the reliability of his conviction.  We reach this conclusion for two reasons.

¶ 35    First, the challenged statements were brief.  *See People v. McMinn,* 2013 COA 94, ¶ 70 (finding no plain error where the prosecutor's comments "made up a small part of the prosecutor's closing argument").  The prosecutor made only fleeting statements that the jury would "have to believe" the witnesses "made this all up."  Further, these statements appear to have been made in direct response to Fleming's theory that the touching was accidental and not for sexual gratification.  Specifically, the prosecutor asked the

jury to "decide who to believe" regarding whether the defense's theory comports with common sense. And the prosecutor even acknowledged, "Nothing I have said is evidence. It's argument."

¶ 36 Second, the court properly instructed the jury on the prosecution's burden of proof and the beyond a reasonable doubt standard. *See Cuellar*, ¶¶ 76-77 (prosecutor's error in arguing the jury must disbelieve a witness before it could acquit was harmless in part because of the court's proper instructions). In addition to correctly instructing on each element of the charged offenses, the court correctly informed the jury that it "must follow the instructions" given, that the prosecution bore the burden of proof to prove "each and every element" of the charged crimes "beyond a reasonable doubt," and that if the jury found the prosecution "failed to prove any one or more of the elements of a crime beyond a reasonable doubt," it "should find the defendant not guilty of that crime." The court also instructed the jury that it is the "sole judge[] of the credibility of each witness and the weight to be given to the witness's testimony" and that it "may believe all of the testimony of a witness, part of it, or none of it." Absent any evidence to the contrary, which Fleming does not allege and which does not appear

in the record, "we assume the jury heeded the court's instructions." *People v. Villa*, 240 P.3d 343, 352 (Colo. App. 2009).

¶ 37 Because the alleged error was not substantial, it does not warrant reversal under plain error review.

## IV.  SOLSA

¶ 38 Fleming contends that SOLSA is unconstitutional facially and as applied.  We disagree.

### A.  Standard of Review and Applicable Law

¶ 39 SOLSA governs the sentencing procedures applicable to most felony sex offenses.  *See* § 18-1.3-1001, C.R.S. 2025.  SOLSA provides that, under certain circumstances, "the district court having jurisdiction shall sentence a sex offender to the custody of the department for an indeterminate term of at least the minimum of the presumptive range specified in section 18-1.3-401 for the level of offense committed and a maximum of the sex offender's natural life." § 18-1.3-1004(1)(a), C.R.S. 2025.  The constitutionality of SOLSA is an issue of law we review de novo. *People v. Sabell*, 2018 COA 85, ¶ 46.

## B. Facial Challenge

¶ 40    Fleming argues that SOLSA is facially unconstitutional because it violates procedural due process, substantive due process, equal protection, the prohibition against cruel and unusual punishment, and the separation of powers doctrine. As Fleming acknowledges, divisions of this court have rejected every facial challenge to SOLSA's constitutionality. *See id.* at ¶ 47; *People v. Relaford*, 2016 COA 99, ¶ 72; *People v. Torrez*, 2013 COA 37, ¶ 88, *People v. Collins*, 250 P.3d 668, 679 (Colo. App. 2010); *People v. Villa*, 240 P.3d at 359; *People v. Firth*, 205 P.3d 445, 452 (Colo. App. 2008). We are not persuaded to depart from these decisions, and therefore we reject Fleming's contentions for the reasons stated therein.

## C. As-Applied Challenge

¶ 41    To prevail on an as-applied challenge, "the defendant must show that the statute is unconstitutional under circumstances in which the [defendant] has acted." *People v. Trujillo*, 2025 COA 22, ¶ 46 (citation modified). In his appellate briefing, Fleming does not specifically address how SOLSA is unconstitutional under his circumstances. He only broadly discusses how SOLSA impacts sex

20

offenders and that his facial constitutional challenges are "especially apparent" when looking at SOLSA's application to his case. Because it is undeveloped, we decline to address his as-applied challenge on the merits. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (declining to address underdeveloped arguments).

## V. Disposition

¶ 42 The judgment is affirmed.

JUDGE YUN and JUDGE SCHOCK concur.